| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts **2** The Superior Court |
|---|---|---|
| | | COUNTY Suffolk Superior Court (Boston) |

| Plaintiff | GF Funding Swansea, LLC | Defendant | Ocean Investment Holdings, LLC |
|---|---|---|---|
| ADDRESS: | 670 N. Commercial Street, Suite 303 | ADDRESS: | 171 Phillips Avenue |
| | Manchester, NH 03101 | | Swampscott, MA 01907 |
| | | | |

| Plaintiff: | Swansea Holdings, LLC | Defendant: | Nicholas Fiorillo |
|---|---|---|---|
| ADDRESS: | 1 Washington Mall | ADDRESS: | 3 Kales Way |
| | Boston, MA 02108 | | Harwichport, MA 02646 |
| | | | |

| Plaintiff: | SMI Holdings, LLC | Defendant: | |
|---|---|---|---|
| ADDRESS: | 1662 Elm Street | ADDRESS: | |
| | Manchester, NH 03101 | | |
| | | | |

| Plaintiff Attorney: | Kevin T. Peters | Defendant Attorney: | |
|---|---|---|---|
| ADDRESS: | Gesmer Updegrove LLP | ADDRESS: | |
| | 40 Broad Street, 3rd Fl. | | |
| | Boston, MA 02109 | | |
| BBO: | 550522 | BBO: | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D01 | Specific Performance of a Contract | A | ☒ YES   ☐ NO |

*If "Other" please describe: _____

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☒ YES   ☐ NO | ☐ YES   ☒ NO |

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS

A. Documented medical expenses to date

    1. Total hospital expenses _____

    2. Total doctor expenses _____

    3. Total chiropractic expenses _____

    4. Total physical therapy expenses _____

    5. Total other expenses (describe below) _____

    _____

               Subtotal (1-5): **$0.00**

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below) _____

_____

               TOTAL (A-F): **$0.00**

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

_____

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Specific Performance | |
| | Total | |

| Signature of Attorney/Unrepresented Plaintiff: X | Date: | May 13, 2022 |
|---|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

| | | |
|---|---|---|

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney/Unrepresented Plaintiff: X | Date: | May 13, 2022 |
|---|---|---|

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, SS.                                      SUPERIOR COURT
                                                 BUSINESS LITIGATION SESSION

GF FUNDING SWANSEA, LLC,
SWANSEA HOLDINGS, LLC, SMI
HOLDINGS LLC,

     Plaintiffs,

        v.                              CIVIL ACTION NO.

OCEAN INVESTMENT HOLDINGS, LLC
and NICHOLAS FIORILLO,

     Defendant.

## COMPLAINT AND JURY DEMAND

       GF Funding Swansea, LLC, Swansea Holdings, LLC, and SMI Holdings LLC

("Plaintiffs"), by and through their attorneys, bring this action against Ocean Investment

Holdings, LLC and Nicholas Fiorillo seeking specific performance and damages for breach of

contract and violations of Mass. Gen. L. Ch. 93A §11, among other claims. For their complaint,

Plaintiffs state as follows:

## PARTIES

       1.     Plaintiff GF Funding Swansea, LLC ("GF" or collectively "Plaintiffs") is a

Massachusetts limited liability company with a principal place of business at 670 N. Commercial

St., Suite 303 Manchester, New Hampshire.

       2.     Plaintiff Swansea Holdings, LLC ("Swansea" or collectively "Plaintiffs") is a

Massachusetts limited liability company with a principal place of business at 1 Washington Mall,

Boston, Massachusetts.

3.      Plaintiff SMI Holdings LLC ("SMI" or collectively "Plaintiffs") is a New Hampshire limited liability company with a principal place of business at 1662 Elm Street Manchester, New Hampshire.

4.      Defendant Nicholas Fiorillo ("Fiorillo") is an individual residing in Massachusetts and having a principal and usual place of business at 3 Kales Way, Harwichport, Massachusetts.

5.      Defendant Ocean Investment Holdings, LLC ("Ocean Investment") is a Massachusetts limited liability company with a principal place of business at 171 Phillips Ave., Swampscott, Massachusetts. Fiorillo owns 100% of Ocean Investment.

## FACTS

6.      This matter devolves from the acquisition and redevelopment of land and improvements in Swansea, Massachusetts commonly known as The Swansea Mall, 262 Mall Drive, Swansea, MA 02777 (the "Property").

7.      On March 21, 2019, Plaintiffs and Ocean Investments entered into a Tenant-in-Common Agreement (the "TIC Agreement") "for the limited purpose of owning, developing, leasing, renting, operating, and maintaining the Property." TIC Agreement ¶4.

8.      Upon execution of the TIC Agreement, Ocean Investments acquired a 5% undivided tenancy in common interest in the Property. Exhibit A to TIC Agreement.

9.      The TIC Agreement requires all the owners to contribute financially to the operation and maintenance of the Property. Specifically, ¶5 states:

> Contributions. If and to the extent that the Owners, by 76% majority vote, determine that any amount should be contributed by the Owners for the operation or maintenance of the Property, each Owner will contribute such Owner's TIC Percentage of such amount. The failure of any Owner to make any such contribution within ten (10) days after receipt of written notice requesting same shall constitute a material breach of this Agreement and the non-contributing Owner shall be considered in default hereunder.

10.    On September 27, 2021, Plaintiffs made demand upon Ocean Investment seeking $610,473.04 pursuant to ¶5 of the TIC Agreement. Ocean Investment refused to comply with that demand.

11.    The penalties for failure of an owner to satisfy its obligations under ¶5 of the TIC is forfeiture of the owner's interest. The TIC states:

> Each Owner acknowledges and agrees that an Owner's failure to adequately contribute to ensure that the Property's cash on hand is sufficient to meet its reasonably foreseeable liabilities when due will cause irreparable harm to the financial condition of the Property and would result in a need for contributing Owners to provide cash in excess of their proportionate share of their respective ownership interest. …
>
> * * *
> Notwithstanding any provision in this Agreement to the contrary, in the event that the non performing Owner does not fulfill his/her/its obligations to the performing Owners within thirty (30) days of the Declaration Date, the performing Owners shall have the option, to immediately exercise the right to have the non performing Owner surrender his/her/its entire Property interest to the performing Owners, and surrender to the performing Owners the non performing Owner's fee interest in the Property, of which shall be immediately forfeited and surrendered to the remaining Owners, pro rata, based on their respective percentage interests, provided, however, any such forfeiture of Property interest by a non performing Owner shall not serve to release the non performing Owner of his/her/its financial obligations to the performing Owners as exist prior to the date of Property interest forfeiture.

12.    Notwithstanding Plaintiffs' right to distribute Ocean Investment's interest among themselves upon Ocean Investment's financial default, Plaintiffs engaged with Fiorillo to settle that default. The negotiations resolved into agreements to acquire Ocean Investment's interest in the Property for one million five hundred thousand dollars ($1,5000,000). See Purchase and Sale Agreement among GF Funding Swansea, LLC, Ocean Investments Holdings, LLC, and Nicholas Fiorillo Dated January 10, 2022 ("True Storage Agreement"), Exhibit B; Purchase and Sale Agreement among GF Funding Swansea, LLC, Swansea Holdings, LLC, and SMI Holdings,

LLC, and Ocean Investments Holdings, LLC dated January 10, 2022 ("Mall Agreement"),

Exhibit C.

13.     True Storage Agreement and the Mall Agreement each state at ¶3 this obligation:

The Parties agree that the Deed shall be recorded and in the event that the Deed requires correction in the future due to any title company or title underwriter matter in connection with any future financing or in connection with any future conveyance, Ocean, its successors and assigns shall cooperate with the same and execute any necessary instruments to accomplish the same, without expense to Ocean, its successors and assigns.

14.     True Storage Agreement and the Mall Agreement each contained the following release language:

Effective upon the recording of the Deed and payment of the Purchase Price, excluding any obligations contained herein, the Buyer parties, their respective agents, successors and assigns and the Seller parties, their respective agents, successors and assigns, do hereby mutually discharge and release the other, their current, former and future tenant in common owners, officers, directors, shareholders, member, managers, employees, affiliates, successors, and predecessors, of and from any and all actions, causes of action, suits, controversies, proceedings, and all liabilities of every name, nature and description, both in law and equity, which they may have ever had or may have, and consequences thereof, but which at this time are unknown or unanticipated and which may develop at some time in the future, and all unforeseen developments arising from known damages, relating in any way to the Property and/or businesses conducted at the Property now or in the future. …

15.     Fiorillo is a party personally to the True Storage Agreement and released all his personal claims against Plaintiffs other than claims he may have against a person specifically excluded from the release.

16.     Thereafter, Plaintiffs entered into an agreement with Prime Group Holdings ("Prime") to sell certain parcels. While investigating title to the Property, the title insurer determined that deeds to the Mall Property and True Storage Parcel did not contain corporate excise tax lien waiver language. The title insurer agreed to accept a corrective affidavit to resolve the clouds on the titles.

17.     Pursuant to ¶3 of the Purchase Agreements, GF Funding delivered three draft affidavits to Fiorillo, any of which would have satisfied Prime's title insurer.

18.     Rather than comply with Ocean Investment's contractual obligations to sign one of the drafts, on March 26, 2022, Fiorillo sent the demand letter attached hereto and incorporated by reference as Exhibit D.

19.     Although the letter is on his attorney's letterhead, and was ostensibly signed by his attorney, Fiorillo drafted Exhibit D for his lawyer's signature. In the letter, Fiorillo baselessly claims, *inter alia*:

   a.  That he was coerced into selling for $1.5 million Ocean Investment's interests in the Property and his rights against GF Funding which he values at $200,000,000,

   b.  That he and his family were threatened with violence,

   c.  That Ocean Investment is entitled to a one-third interest in the Property although the company only ever owed 5%,

   d.  That he was the victim of a "bait and switch", and

   e.  That GF Funding is "clearly attempting to pass 'bad title' uttering fraudulent documents," ostensibly referring to Fiorillo's fraudulent contention that his name was forged on one or more of the deeds conveying Ocean Investment's interests to GF Funding.

20.     Fiorillo made the accusations stated in a March 26, 2022, letter knowing that he had already released his claims against Plaintiffs in the True Storage Agreement.

21.     Fiorillo alleges that his name was forged to one or both agreements notwithstanding the fact that he signed those agreements at a registry of deeds in front of witnesses including GF Funding's lawyer.

22.     Fiorillo's purposes for drafting and sending the March 26, 2022, letter were these:

    a.  to supply him with a pretext for refusing to sign the affidavits required by Prime's title insurer, and

    b.  to generate a false controversy to cloud title in hopes that his unfair and deceptive conduct would induce GF Funding to pay him money to which he knows he is not entitled.

23.     Fiorillo has intentionally refused to comply with Ocean Investment's obligations pursuant ¶3 of the True Storage Agreement and the Mall Agreement without right or justification.

24.     Fiorillo's willful and knowing misstatements in his March 26, 2022, letter were made with the intention to interfere with the contemplated sale of certain parcels to Prime, with whom GF Funding has a contractual and advantageous business relationship.

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT**</u>

25.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 24.

26.     To affect the sale of its interests in the Property to GF Funding, Ocean Investment signed the two sale agreements discussed *supra*.

27.     Plaintiffs have fully performed their obligations under the True Storage Agreement and the Mall Agreement. They released Ocean Investment from a $610,473.04 obligation and paid Ocean Investment $1.5 million for its 5% interest in the Property.

28.     The True Storage Agreement and the Mall Agreement require Ocean Investment to "execute any necessary instruments … in the event that the Deed requires correction in the future due to any title company or title underwriter … in connection with any future conveyance…"

29.     Plaintiffs made demand on Ocean Investment to execute one of three versions of an affidavit the title insurer will accept to correct the deeds Ocean Investment delivered to GF Funding pursuant to the True Storage Agreement and the Mall Agreement.

30.     Ocean Investment has refused to cooperate with GF Funding to correct the deeds, in violation of ¶3 of the True Storage Agreement and ¶3 the Mall Agreement.

31.     GF Funding has been damaged by Ocean Investment's breach of contract.

## COUNT II
## VIOLATION OF MASS. GEN. L. CH. 93A, §§2 AND 11

32.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 24.

33.     GF Funding, Fiorillo, and Ocean Investments were parties to the True Storage Agreement and the Mall Agreement, both of which state "[t]he validity, interpretation, performance, and enforcement of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts."

34.     In order to extort money from GF Funding, at Fiorillo's direction Ocean Investment intentionally breached its contractual obligations based on fraudulent pretexts.

35.     The violation was not only willful and knowing, but also sufficiently egregious to contravene Mass. Gen. L. Ch. 93A §11. The letter attached as Exhibit D is evidence of, and part of, that violation, is intentionally false and deceptive, and was generated primarily if not solely to create unfairly a cloud on title to the Property to coerce GF Funding to pay Fiorillo money to which he is not entitled.

36.     On May 4, 2022, GF Funding sent a demand citing Mass. Gen. L. Ch. 93A §11 demanding that Ocean Investment comply with its obligations pursuant to ¶3 of the True Storage Agreement and ¶3 the Mall Agreement.

7

37.     Fiorillo and Ocean Investment have refused to respond to or comply with that demand.

38.     Fiorillo's and Ocean Investments' intentional breaches constitute willful and knowing violations of Mass. Gen. L. Ch. 93A §§2 and 11.

39.     GF Funding has been damaged by Ocean Investment's intentional violations of the True Storage Agreement and the Mall Agreement.

## COUNT III
## DECLARATORY JUDGMENT

40.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 24.

41.     A dispute has arisen over Ocean Investment's obligation to execute documents required to correct a deficiency in deeds conveying Ocean Investment's interests in the Mall Property and True Storage Parcel to GF Funding.

42.     Pursuant to Mass. Gen. L. Ch. 231A, Plaintiffs are entitled "to secure determinations of right, duty, status or other legal relations" concerning Ocean Investment's obligation to execute documents required to correct a deficiency in deeds conveying Ocean Investment's interests to GF Funding.

43.     Absent a declaration of the parties' rights and interests in the Property, there is a substantial risk that title to the Property will be clouded, adversely impacting Plaintiffs' interests.

44.     Pursuant to Mass. Gen. L. Ch. 231A, Plaintiffs respectfully request the Court to declare the parties' rights and obligations regarding ¶3 of the True Storage Agreement and ¶3 the Mall Agreement.

45.     Pursuant to Rule 70 of the Massachusetts Rules of Civil Procedure, Plaintiffs respectfully request that the Court order Ocean Investment and Fiorillo to execute documents sufficient to discharge the contractual obligations stated in ¶3 of the True Storage Agreement and

Date Filed 5/13/2022 12:56 PM
Superior Court - Suffolk
Docket Number

¶3 the Mall Agreement, and to disclaim their interest in the Property in a form sufficient to file with the appropriate registry of deeds.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACT

46.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 24.

47.     Ocean Investment and GF Funding are parties to the True Storage Agreement and the Mall Agreement.

48.     Fiorillo, as Ocean Investment's owner, is aware of these contractual relationships.

49.     Fiorillo has intentionally interfered with these contractual relationships.

50.     Fiorillo's motive for and means by which he interfered with these contractual relationships were wrongful.

51.     Plaintiffs have been damaged by Fiorillo's tortious interference with Plaintiffs' contracts with Ocean Development.

WHEREFORE, GF Funding Swansea, LLC, Swansea Holdings, LLC, and SMI Holdings LLC respectfully requests that this Court:

a.  Enter judgment in their favor on all counts of the complaint;

b.  Declare the parties' rights pursuant to Mass. Gen. L. Ch. 231A;

c.  Enter judgment ordering Defendant to sign documents to be filed with the Bristol County Registry of Deeds in the form attached hereto as Exhibit E;

d.  In the event Defendant fails to comply with the Court's order requested in paragraph (c), direct the act to be done at Defendant's cost by some other person appointed by the Court pursuant to Mass. R. Civ. P. 70;

e.  Award Plaintiffs attorney's fees pursuant to Mass. Gen. L. Ch. 93A with an appropriate multiple reflecting the egregiousness of the violation;

f.   Award Plaintiffs damages in an amount to be proven at trial, plus 12% interest from

the date of breach; and

g.   Award Plaintiffs such other and further relief as may be just and appropriate.

GF FUNDING SWANSEA, LLC, SWANSEA HOLDINGS, LLC, SMI HOLDINGS LLC DEMAND A TRIAL BY JURY ON ALL COUNTS OF THE COMPLAINT.

Respectfully submitted,

GF FUNDING SWANSEA, LLC,
SWANSEA HOLDINGS, LLC, SMI
HOLDINGS LLC,

By their attorney,

Kevin T. Peters, BBO#550522
kevin.peters@gesmer.com
GESMER UPDEGROVE LLP
40 Broad Street
Boston, MA  02109
Telephone:  (617) 350-6800

Dated : May 12, 2022

# EXHIBIT A

## <u>TENANTS-IN-COMMON AGREEMENT</u>

**THIS TENANTS-IN-COMMON AGREEMENT** (this "**Agreement**"), is made, effective as of ___May 21___, 2019 (the "**Effective Date**"), by and between **GF Funding Swansea, LLC**, a Massachusetts limited liability company, 670 N. Commercial St., Suite 303, Manchester, New Hampshire 03101 ("**GF**"), **Swansea Holdings, LLC**, a Massachusetts limited liability company, c/o The McLaughlin Brothers, PC, 1 Washington Mall, 16th Floor, Boston, MA 02108 ("**Swansea**"), **SMI Holdings, LLC**, a New Hampshire limited liability company, 1662 Elm Street, Manchester, NH 03101 ("**SMI**"), **Ocean Investment Holdings, LLC**, a Massachusetts limited liability company, 171 Phillips Ave Swampscott MA 01907 ("**Ocean**"). In this Agreement, GF, Swansea, SMI and Ocean are sometimes referred to individually as an "**Owner**" and collectively as the "**Owners**".

### <u>Recitals:</u>

On the Effective Date and simultaneous with the effectiveness of this Agreement, each Owner has acquired an undivided tenancy in common interest, each in the relative percentage set forth opposite such Owner's name in <u>Exhibit A</u> attached hereto (each, a "**TIC Interest**" or "**TIC Percentage**"), in and to the real property commonly known as The Swansea Mall, with a Street address of 262 Mall Drive, Swansea, MA 02777, and more particularly described in <u>Exhibit B</u> attached hereto, together with all rights, privileges, grants and easements appurtenant to said real property (collectively, the "**Property**"). The Owners own their respective TIC Interests in the Property as tenants in common (collectively, the "**Tenancy-in-Common**"), subject to the terms, covenants, and conditions set forth in this Agreement, which terms, covenants, and conditions the Owners have agreed are necessary to ensure the proper and orderly management and operation of the Property during the period of the Owners' co-ownership thereof.

**NOW, THEREFORE,** in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Owners hereby agree as follows:

1.  **Defined Terms**.  As used herein, the following terms shall have the meanings set forth below:

    (a)  "**Affiliate**" means, with respect to a Person, another Person, directly or indirectly, through one or more intermediaries, Controlling, Controlled by, or under common Control with the Person in question.

    (b)  "**Control**" means, with respect to a Person that is a corporation, the right to exercise, directly or indirectly, more than fifty percent (50%) of the voting rights attributable to the shares of the controlled corporation, and, with respect to a Person that is not a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled Person.

(c)    "**Person**" shall mean an individual, partnership, corporation (including a business trust), limited liability company, joint stock company, trust, unincorporated association, joint venture entity, governmental authority or other entity.

2.    **Title.**

(a)    Title to the Property shall be held by the Owners as tenants in common, with each Owner owning the TIC Interest set forth opposite such Owner's name in <u>Exhibit A</u>.

(b)    It is expressly acknowledged and agreed that this Agreement is intended to create a relationship among the Owners with respect to their co-ownership of the Property, which co-ownership arrangement is classified under the laws of the State in which the Property is located, and also under applicable tax laws, as a tenancy in common. The parties intend that the terms of this Agreement shall comply in all material respects with the requirements for an advance ruling set forth in Revenue Procedure 2002-22, 2002-1 C.B. 733, with respect to the operation of a property held as a tenancy-in-common. Further, each of the Owners hereby agrees that if, despite their agreement to the contrary set forth herein, they should be deemed by a taxing authority to be participants in a business entity taxable as a partnership, then it is their intent that their co-ownership of the Property, and the relationship among the Owners, shall be excluded from Subchapter K of the Internal Revenue Code of 1986, as amended (the "**Code**"), pursuant to Treasury Regulation Section 1.761-2(b)(2)(ii) beginning with the first taxable year of this Agreement. Each Owner acknowledges that this election is a deemed election and that no filing to this effect will be made with the Internal Revenue Service or any other taxing authority. Furthermore, the Owners also agree that this election will be binding at all times that this Agreement is in effect and at no time after the execution of this Agreement will any Owner take any action inconsistent with this deemed election including any notification to the Internal Revenue Service pursuant to Treasury Regulation Section 1.761-2(b)(3).

(c)    It is the intent and purpose of the Owners that their relationship should be that of co-owners of the Property. The Tenancy-in-Common will not file a partnership or corporate tax return, conduct business under a common name, execute an agreement identifying any or all of the Owners as partners, shareholders, or members of a business entity, or otherwise hold itself out as a partnership or other form of business entity, nor will the Owners hold themselves out as partners, shareholders, or members of a business entity.

3.    **Term.** The term of this Agreement shall commence on the Effective Date and shall continue in perpetuity thereafter unless and until this Agreement is terminated pursuant to Section 11.

4.    **Scope and Purposes.** This Agreement is being undertaken for the limited purpose of owning, developing, leasing, renting, operating, and maintaining the Property.

5.    **Contributions.** If and to the extent that the Owners, by 76% majority vote, determine that any amount should be contributed by the Owners for the operation or maintenance of the Property, each Owner will contribute such Owner's TIC Percentage of such amount. The

failure of any Owner to make any such contribution within ten (10) days after receipt of written notice requesting same shall constitute a material breach of this Agreement and the non-contributing Owner shall be considered in default hereunder.

Penalties for Failure of An Owner to Adequately Contribute. Each Owner acknowledges and agrees that an Owner's failure to adequately contribute to ensure that the Property's cash on hand is sufficient to meet its reasonably foreseeable liabilities when due will cause irreparable harm to the financial condition of the Property and would result in a need for contributing Owners to provide cash in excess of their proportionate share of their respective ownership interest. Each Owner agrees that if he/she/it shall fail to make his/her/its required proportionate share contribution within ten (10) days of a majority of Owners having declared in writing the need for the same (the "Declaration Date"), based upon the reasonably foreseeable liabilities coming due at the time the need is declared, any non performing Owner shall be liable to all performing Owners, in an amount equal to the sums paid by performing Owners on behalf of the non performing Owner, plus interest at the rate of twelve percent (12%) per annum. Notwithstanding any provision in this Agreement to the contrary, in the event that the non performing Owner does not fulfill his/her/its obligations to the performing Owners within thirty (30) days of the Declaration Date, the performing Owners shall have the option, to immediately exercise the right to have the non performing Owner surrender his/her/its entire Property interest to the performing Owners, and surrender to the performing Owners the non performing Owner's fee interest in the Property, of which shall be immediately forfeited and surrendered to the remaining Owners, pro rata, based on their respective percentage interests, provided, however, any such forfeiture of Property interest by a non performing Owner shall not serve to release the non performing Owner of his/her/its financial obligations to the performing Owners as exist prior to the date of Property interest forfeiture. In addition to the foregoing, performing Owners shall also have all other remedies, available at law and in equity, to include, without limitation, attachment of non performing Owner's assets and trustee process of non performing Owner's financial accounts. The intent of the parties is to ensure that all Owners perform their cash contribution obligations without delay in order that all Owners are treated equitably in connection with all such matters. This provision shall apply notwithstanding any other provisions in the Agreement to the contrary. In any such action to enforce this remedy, or to defend related counterclaims or the like, the non performing Owner, (and/or its trustees, beneficiaries, officers, directors, shareholders, employees, Managing Owners, members, affiliates, servants, agents, other representatives and successors and assigns) shall indemnify and hold harmless the performing Owners, and the non performing Owner shall pay all costs and fees, including attorneys fees, of the performing Owners. In the event that an Owner received its tenant in common interest in the Property without having made an initial cash contribution for the same; although such Owner may have had limited financial resources at the time of receiving such tenant in common interest in the Property, such Owner shall have an obligation to make adequate contributions after having received distributions in connection with Property matters and at all other times when such Owner, or its sole member, has the

financial means to make adequate contributions, it being the intent of the parties that no Owner, or its sole member, shall be anticipated to be subsidized by the other Owners.

6.   **Financing**.

(a)   As of the Effective Date, the Property is not subject to any mortgage financing. As used herein, "**Mortgage Financing**" means, as of any particular date, any indebtedness secured by a mortgage on the Property that has been approved by the 76% majority vote of the Owners and is then outstanding.

(b)   If required by the lender of any Mortgage Financing (the "**Lender**"), the Owners shall be jointly and severally liable to such Lender for the entire Mortgage Financing.

(c)   Notwithstanding the applicability of subsection (b) above, the Owners shall, as between themselves, be liable for any Mortgage Financing in proportion to their respective TIC Percentages. If and to the extent that any Owner pays more than such Owner's TIC Percentage of any Mortgage Financing amounts (including principal, interest, fees, costs, and expenses) (the "**Excess Amount**"), such Owner (the "**Requesting Owner**") may provide written notice thereof to the other Owner(s) (each, a "**Contributing Owner**"), including the Requesting Owner's calculation of the Excess Amount in reasonable detail, and a request that each Contributing Owner pay such Contributing Owner's pro rata share of the Excess Amount. Each Contributing Owner shall pay such Contributing Owner's pro rata share of the Excess Amount to the Requesting Owner within fifteen (15) days of such Contributing Owner's receipt of such written notice. For purposes of determining the pro rata share of a Contributing Owner, such pro rata share shall be equal to a fraction, the numerator of which shall be the TIC Percentage of such Contributing Owner and the denominator of which shall be the aggregate TIC Percentages of all of the Contributing Owners; for the avoidance of doubt, if there is only one Contributing Owner, such Contributing Owner shall be responsible for the entire Excess Amount.

7.   **Sharing of Profits and Losses.** All items of loss, deduction, and credit pertaining to or arising from the Property and/or the operation or maintenance of the Property shall be shared by the Owners in accordance with their respective TIC Interests. All items of income and gain shall be shared by the Owners in the manner set forth for distributions in Section 8.

8.   **Distributions.** Each Owner shall share in all revenue, income, gain, expenses, losses, deductions, and credits arising from or with respect to the Tenancy-in-Common in accordance with their respective TIC Interests. All rights to distribution shall be subordinate and subject to the terms and conditions of any Mortgage Financing. Notwithstanding the foregoing, and except as otherwise provided in this Agreement, distributions of cash or other assets pertaining to or arising from the Property, after the payment of any current installment due to any Lender, the payment of expenses incurred or reasonably required to be incurred in the ordinary course of the operation or maintenance of the Property (including payment of amounts payable under the Management Agreement (as defined below)), and the

establishment of such reserves as may be unanimously approved by the Owners, shall be made in such amounts and at such times as determined unanimously by the Owners. Subject to any offsets made pursuant to Section 5, all such distributions shall be made to the Owners in accordance with their respective TIC Interests.

9.   **Management of the Property.** The management of the Property shall be under the direction and control of **Shane D. Brady, Arthur W. Sullivan and Dick Anagnost,** (collectively "Managers" and individually a "Manager") based on the majority interest held by GF and the anticipated role of Dick Anagnost as project development leader. If and to the extent necessary, the parties shall enter into a formal commercially reasonable management agreement in due course.

10.  **Operating Bank Account Entity.** To the extent allowed by law and so long as not contrary to Section 1031 Exchange requirements, promptly after the full signing of this Agreement, there shall be created a legal entity to manage the financial affairs of the Property through a related operating bank account, which legal entity shall be a pass through to the Owners in proportion to the ownership interest percentages as set forth in Exhibit A.

11.  **Scope of Owners' Authority.** Except as may otherwise be specifically set forth in this Agreement, all decisions made and actions taken by the Owners with respect to the Property shall be made or taken only upon the 76% majority vote of the Owners, including the following decisions and actions:

(a)   borrowing money or otherwise incurring any indebtedness secured by the Property or an Owner's interest therein (as distinct from selling or transferring an Owner's interest in the Property), or otherwise mortgaging, pledging, assigning, or allowing any lien to be granted, placed, or established on the Property or an Owner's interest therein;

(b)   assigning, transferring, pledging, compromising, or releasing any of the claims of or due to the Owners pertaining to the Property, except upon payment in full, or consenting to the settlement or arbitration of any disputes or controversies pertaining to the Property;

(c)   pledging or hypothecating or in any manner transferring an Owner's ownership interest in the Property, in a manner that would violate the terms of any Mortgage Financing;

(d)   creating or modifying any blanket lien upon the Property, incurring any indebtedness to be secured by such a lien, or modifying the terms or conditions of any such lien or indebtedness;

(e)   selling, leasing, or renting all or a portion of the Property (as distinct from selling or transferring an Owner's interest in the Property, subject to the provisions of Section 14), excepting the leasing or renting of the Property by a Manager; and

(f)   the hiring of any manager (including the Manager), and the negotiation of any management contract (including the Management Agreement) and any extensions or renewals of the same.

12. **Termination.** This Agreement shall terminate and be of no further force or effect if any of the following events shall occur:

(a) the sale of the Property, provided the proceeds from such sale are used (i) first, to pay in full any outstanding amount due on any Mortgage Financing, and (ii) second, to pay all costs and expenses incurred in connection with the holding, management, marketing, and sale of the Property, with all remaining proceeds from such sale being distributed to the Owners in accordance with their respective TIC Interests (subject to any offsets made pursuant to Section 5);

(b) the agreement in writing of all of the Owners to terminate this Agreement;

(c) upon one Owner becoming the sole owner of the Property, or

(d) any event which by operation of law causes a termination of this Agreement.

13. **Transfers.** Subject to the right of first offer of other Owners provisions of Section 14 and also any restrictions that may be imposed by the terms and conditions of any Mortgage Financing, an Owner may sell, transfer, convey, assign, or encumber all or any portion of such Owner's TIC Interest. Any person acquiring all or any portion of an Owner's TIC Interest must execute and deliver to the other Owner(s) a written assumption of this Agreement (expressly including the obligations set forth in Section 6), in form and substance reasonably satisfactory to the other Owner(s). Upon the closing of any sale, transfer, conveyance, or assignment of all or any portion of an Owner's TIC Interest, this Agreement shall be modified to substitute the purchaser as an Owner hereunder in place of such selling or transferring Owner.

14. **Owners' Authority and other Activities.** Except as otherwise specifically provided in this Agreement, no Owner shall have any authority to bind or act for, or be liable for any obligations or debts of any other Owner which were incurred prior to the date of this Agreement or while this Agreement is in effect, and each Owner agrees to indemnify, protect, defend, and hold the other Owner(s) harmless of, from, and against any and all claims, damages, demands, expenses, liabilities, or losses of every kind, character, and nature asserted by or on behalf of any person arising out of acts in violation of this provision by the indemnifying Owner, including reasonable legal fees, costs of suit, and expenses in connection with defending any such claim.

15. **Sale of TIC Interest.**

(a) With respect to the rights of the Owners set forth in this Section 14, such rights (i) are subordinate to the rights of the Lender and the obligations of the Owners under any Mortgage Financing, and (ii) may be exercised only if and to the extent permitted by the terms of any such Mortgage Financing.

(b) In the event that an Owner (a **"Selling Owner"**) desires to sell or transfer all or any portion of such Selling Owner's TIC Interest (the **"Offered Interest"**), the Selling Owner must first offer the other Owner(s) (each, a **"Non-Selling Owner"**) the right to purchase the Offered Interest. The Selling Owner shall provide the Non-Selling

Owner(s) with a written proposal setting forth the purchase price, any deposit (which, if included, may not exceed five percent (5%) of the purchase price), and other terms and conditions of the offer (the **"Offer Notice"**). The Non-Selling Owner(s) are not obligated to purchase all or any portion of the Offered Interest.

(c)     If a Non-Selling Owner desires to purchase the Offered Interest, such Non-Selling Owner must so notify the Selling Owner in writing (the **"Acceptance Notice"**) within thirty (30) of receipt of the Offer Notice (the **"Acceptance Period"**), which Acceptance Notice, in order to be effective, must be accompanied by the amount of any deposit specified in the Offer Notice, if any (the **"Deposit"**). If no Non-Selling Owner elects to purchase the Offered Interest and pay such Deposit, if any, within the Acceptance Period, the Selling Owner shall be free to sell the Offered Interest to a third party; provided, however, that if such sale is not consummated within thirty (30) days following the expiration of the Acceptance Period at a purchase price and on other terms and conditions (including Deposit, if any) as are consistent in all material respects with the purchase price and other terms and conditions set forth in the Offer Notice, the Selling Owner must re-offer the Offered Interest to the Non-Selling Owner(s) in accordance with the provisions of this Section before selling the same to a third party. Any Non-Selling Owner that fails to give such Acceptance Notice and Deposit, if any, within the Acceptance Period, shall be deemed to have waived such Non-Selling Owner's rights with respect to that sale. The Non-Selling Owner(s) shall have no right to purchase less than all of the Offered Interest. If any Non-Selling Owner timely accepts the Offer Notice, the parties agree to negotiate in good faith an acceptable agreement for the sale and purchase of the Offered Interest; provided, that such purchase and sale agreement shall incorporate the terms set forth in the Offer Notice. If not otherwise stated in the Offer Notice or the purchase agreement, the closing shall occur within thirty (30) days of the acceptance of the Offer Notice.

(d)     If more than one Non-Selling Owner elects to purchase the Offered Interest, each Non-Selling Owner shall acquire a pro rata share of the Offered Interest. Unless all of the Non-Selling Owners electing to purchase the Offered Interest otherwise agree in writing, each Non-Selling Owner's pro rata share to be equal to a fraction, the numerator of which shall be the TIC Percentage of such Non-Selling Owner and the denominator of which shall be the aggregate TIC Percentages of all Non-Selling Owners electing to purchase the Offered Interest.

(e)     In the event an Owner transfers such Owner's undivided interest as tenant in common in the Property in violation of this Agreement or any Mortgage Financing, such Owner shall be deemed in default of this Agreement, and the non-defaulting Owner(s) shall be entitled to damages and any and all other relief, including injunctive relief, available at law or in equity. Any such defaulting Owner shall be solely responsible for, and shall indemnify and hold harmless the non-defaulting Owner(s) from and against, all liabilities and expenses of any nature arising out of, or resulting from, such improper transfer.

(f)    Any Non-Selling Owner who purchases all or any portion of an Offered Interest hereunder shall purchase and thereafter hold the same subject to the terms of this Agreement.

16.    **No Covenant Not To Compete.** During the term of this Agreement, no Owner is prohibited, either directly or indirectly, from engaging or participating in the acquisition, purchase, development, or operation of any commercial or residential property within any township or municipality.

17.    **Indemnification.** Each Owner shall indemnify, defend and hold harmless the other Owner(s) from and against any and all claims, demands, losses, damages, liabilities, lawsuits, and other proceedings, judgments, and awards, and costs and expenses (including reasonable attorneys' fees and disbursements) relating to or arising out of, directly or indirectly and in whole or in part, the indemnifying Owner's breach of this Agreement or any activity or liability of such indemnifying Owner not within the scope or purpose of this Agreement.

18.    **Prohibited Acts and Remedy.** Notwithstanding any provision in the Agreement to the contrary, in consideration of any Owner having received its interest in the Property without having made a cash contribution to receive such Property interest ("Non-Contributing Owner"), any such a Non-Contributing Owner agrees that it, (and/or its member, manager, affiliates, servants, agents, other representatives and successors and assigns) shall be prohibited from bringing any suit or any action against any Owner, (and/or its trustees, beneficiaries, officers, directors, shareholders, employees, Managing Owners, members and/or other representatives), or any legal entity in which any such party owns an interest, for any reason, with regard to this Property or any other property, other business venture or other matter of any nature. Any such Non Contributing Owner shall also be prohibited from having its limited liability company membership interest sold, gifted or otherwise transferred from its original member to a new member(s) or replacement member(s) it being the intent of the parties that no such membership interest transfer shall be allowed for any purpose. In the event that any Non-Contributing Owner takes any such prohibited action, its interest in the Property shall be immediately forfeited and surrendered to the remaining Owners, pro rata, based on their respective percentage interests. In any such action to enforce this remedy, or to defend any such suit or claim, the Non-Contributing Owner, (and/or its member, manager, affiliates, servants, agents, other representatives and successors and assigns) shall indemnify and hold harmless, the opposing parties which are the subject of any such action and shall pay all costs and fees, including attorneys fees, of such parties.

19.    **Notices.** All notices, demands, and communications required or provided for in this Agreement shall be in writing and shall be delivered personally or sent by overnight mail or express delivery service to each Owner at such Owner's address set forth in Exhibit A. Each Owner may designate in writing another address for purposes of this Section upon giving the other Owner(s) at least ten (10) days' prior written notice. Notice shall be effective when so delivered or sent.

20.    **Right of Partition.** Each Owner shall have the right, while this Agreement remains in effect, to have the Property partitioned in accordance with and to the extent provided by applicable law; provided, however, so long as any Mortgage Financing is outstanding, each Owner

agrees that it will not seek or be entitled to seek or obtain a partition of all or any part of the Property without first obtaining the prior written consent of the Lender. Accordingly, so long as any Mortgage Financing remains outstanding, each Owner expressly waives any right such Owner may have to partition the Property or any part thereof, whether such right arises under applicable law or otherwise, unless the Lender has consented in writing to such Owner's exercise of such rights.

21.    **Independent Review.** Each Owner acknowledges that such Owner has been advised to consult with separate legal counsel concerning this Agreement prior to its execution. By signing this Agreement, each Owner further acknowledges that such Owner understands the terms of this Agreement, that such Owner is entering into this Agreement voluntarily, and that such Owner has consulted with (or has been afforded an adequate opportunity to consult with) legal counsel selected by such Owner.

22.    **General Provisions.**

(a)    This Agreement constitutes the entire agreement and understanding of the Owners with respect to the matters covered hereby and supersedes all previous written, oral or implied agreements, representations, statements, promises and understandings between them with respect to such matters.

(b)    This Agreement may not be amended or changed except by an agreement in writing executed by each Owner.

(c)    This Agreement shall be binding upon, and for the benefit of, the parties to this Agreement and their permitted successors and assigns.

(d)    The validity, interpretation, and enforcement of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts, without regard to its principles of conflicts of law.

(e)    The Owners expressly agree and consent to the exclusive jurisdiction and venue of the state and federal courts located in the Commonwealth of Massachusetts with respect to any dispute between any of the Owners regarding this Agreement or the enforcement thereof, the Tenancy-in-Common, or the Property, and all instruments and documents delivered in connection herewith. Each Owner hereby waives any objection to venue in such courts.

(f)    If any provision in this Agreement shall be determined by a court of competent jurisdiction to be invalid or unenforceable, such provision shall be enforced to the extent it can be so enforced and such determination shall not affect the remaining provisions of this Agreement, all of which shall remain in full force and effect.

(g)    The failure of any Owner to enforce at any time any of the provisions of this Agreement shall not be construed to be a waiver of any such provision or of any other provision, nor in any way affect the validity of this Agreement or the right of any Owner to enforce each and every such provision in the future. No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach. Any party may, at such

party's option, waive any provision of this Agreement provided such waiver is in writing.

(h)    The rights and remedies of the Owners set forth in this Agreement are not exclusive and each Owner shall be entitled to all rights and remedies available to him under applicable legal or equitable principles.

(i)    The headings of the Sections in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

(j)    All pronouns and any variations thereof shall be deemed to include the masculine, feminine, neuter, singular, and plural thereof as the context may require. In addition, all nouns shall be deemed to include the singular and plural thereof as the context may require. Except as otherwise expressly set forth in this Agreement, the use of "including" and correlative terms means "including without limitation" and shall be interpreted as broadly as possible.

(k)    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original against any party who signed such counterpart, but all of which together shall constitute one and the same instrument.

*[Remainder of Page Intentionally Blank; Signature Page Follows]*

EXECUTED by the Owners, as of the Effective Date.

**Owners:**

GF Funding Swansea, LLC
By: GF Funding, LLC, its Member

By: _____
    Shane Brady, Manager


Swansea Holdings, LLC


By: _____
    George McLaughlin, III, Manager



SMI Holdings, LLC

By: _____
    Dick Anagnost, Manager



Ocean Investment Holdings, LLC

By: _____
    Nicholas Fiorillo, Manager

EXECUTED by the Owners, as of the Effective Date.

**Owners:**

GF Funding Swansea, LLC
By: GF Funding, LLC, its Member

By:_____
Shane Brady, Manager


Swansea Holdings, LLC

By:_____
George McLaughlin, III, Manager


SMI Holdings, LLC

By:_____
Dick Anagnost, Manager


Ocean Investment Holdings, LLC

By:_____
Nicholas Fiorillo, Manager

**EXHIBIT A**

**TIC Interests**

| <u>Owner</u> | <u>TIC Interest</u> |
|---|---|
| GF Funding Swansea, LLC<br>670 N. Commercial St., Suite 303<br>Manchester, New Hampshire 03101<br>Attn: Shane Brady | 57% |
| Swansea Holdings, LLC<br>c/o The McLaughlin Brothers, PC<br>1 Washington Mall, 16th Floor<br>Boston, MA  02108<br>Attn: George McLaughlin, III | 19% |
| SMI Holdings, LLC<br>1662 Elm Street<br>Manchester, NH  03101<br>Attn: Dick Anagnost | 19% |
| Ocean Investment Holdings, LLC<br>171 Phillips Ave,<br>Swampscott MA 01907<br>Attn: Nicholas Fiorillo | 5% |
| **TOTAL** | 100% |

EXHIBIT *B*

### Parcel One (Mall Parcel)

The land in Swansea, Bristol County, Massachusetts, situated on Swansea Mall Road, and being shown as "Remaining Parcel 1" on a plan entitled, "Approval Not Required Plan of Land Carlyle Swansea Partners, LLC 262 Swansea Mall Drive Maps 7, Lot 1, Town of Swansea Bristol County, Commonwealth of Massachusetts, " dated January 14, 2016, prepared by Control Point Associates, Inc., and recorded with the Bristol Fall River District Registry of Deeds in Plan Book 158, Page 32, to which plan reference is hereby made for a more particular description.

"Remaining Parcel 1" contains 2,786,631 S.F. or 63.972 ± acres, according to said plan.

Together with the benefit of the following:

1.     Rights and easements with respect to sign access as set forth in Easement Agreement dated January 11, 1977 among Darswan, Inc. and United States Gypsum Company (collectively, Grantor) and Darswan, Inc. and Arlen Management Corp. d/b/a Swansea Mall Joint Venture (collectively, Grantee), recorded in Book 1168, Page 180; as ratified and amended by Sign Access Easement Agreement dated November 14, 2103 by and between Gator Swansea Property, LLC and Carlyle Swansea Partners, LLC, recorded in Book 8369, Page 214;

2.     Reciprocal Easement Agreement by and between Diversified Equity Corporation of Illinois, Inc. and FirstFed Mortgage Corporation dated March 17, 1998, recorded in Book 3415, Page 221.

3.     Sign easement as reserved in Deed from Carlyle Swansea Partners, LLC to JMAR Realty, LLC dated February 7, 2014, recorded in Book 8416, Page 259.

4.     Terms and provisions of Easements with Covenants and Restrictions Affecting Land ("ECR") dated as of June 12, 2012 between Wal-Mart Stores East, LP and Carlyle Swansea Partners, LLC, recorded in Book 7960, Page 51; as amended by First Amendment to Easements with Covenants and Restrictions Affecting Land dated as of February 7, 2014, recorded in Book 8416, Page 140.

5.     Terms and provisions of Reciprocal Easement Agreement dated November 14, 2013 by and between Carlyle Swansea Partners, LLC and Gator Swansea Property, LLC, recorded in Book 8369, Page 163.

6.     Terms and provisions of Declaration of Easements dated February 7, 2014 by Carlyle Swansea Partners, LLC, recorded in Book 8416, Page 193.

### Parcel Two (Wastewater Treatment Plant)

The land in Swansea, Bristol County, Massachusetts, situated at 788 Wood Road, and being shown as "Proposed Parcel 1" and "Proposed Parcel 2" on a plan entitled, "Plan of Land in Swansea, Massachusetts, Prepared For: Bohler Engineering," dated October 30, 2013, last revised October 31, 2013, prepared by Control Point Associates, Inc., and recorded with the Bristol Fall River District Registry of Deeds in Plan Book 155, Page 30, to which plan reference is hereby made for a more particular description.

"Proposed Parcel 1" contains 452,804 + S.F. or 10.39 + acres, according to said plan.

"Proposed Parcel 2" contains 951,424 + S.F. or 21.84 + acres, according to said plan.

# EXHIBIT B

## PURCHASE AGREEMENT

### SWANSEA TRUE STORAGE PROPERTY

This Purchase (hereinafter "Agreement") is made by and between GF FUNDING SWANSEA, LLC, a Massachusetts limited liability company ("GF" or "Buyer"), whose address is 670 N. Commercial Street, Suite 303, Manchester, New Hampshire 03101 and OCEAN INVESTMENTS HOLDINGS, LLC, a Massachusetts limited liability company ("Ocean") and Nicholas Fiorillo, individually, ("Fiorillo") (Ocean and Fiorillo are collectively referred to as "Seller") whose address is 3 Kales Way, Harwichport, MA 02646, (collectively, "the Parties").

WHEREAS, GF and Ocean are tenant in common owners of the real property located at 262 Swansea Mall Drive in Swansea, Massachusetts, known as True Storage Condominium, and containing condominium units identified as Unit 1, Unit 2 and Unit 3, formerly known as the Apex parcel (the "Property") and the Property contains a self storage business operation; and

WHEREAS, the Buyer desires to purchase Seller's Five Percent (5%) tenant in common interest in the Property.

NOW THEREFORE, in consideration of the agreements and covenants set forth herein, and intending to be legally bound, the Parties agree as follows:

1. The Buyer shall pay the Seller the sum of Eight Hundred Ten Thousand Dollars ($810,000.00) (the "Purchase Price") payment will be effectuated by wire to Seller's attorney prior to Seller executing the deed. Seller's attorney shall hold the funds in his IOLATA account for the benefit of the Seller until the seller affixes his signature to the deed and the deed is filed in the Fall River District Registry of deeds. as such term is defined below. The Purchase Price shall be allocated as set forth in the Deed. The Seller shall record the Deed electronically on the day that this Agreement is fully signed. There shall be no prorations and the Buyer shall pay recording fees and the Massachusetts Transfer Tax in the amount of $3,693.60.   The full performance of this Agreement shall also cancel any and all debt owed by Ocean or Fiorillo related to the Property.

2. Upon the full signing of this Agreement, Fiorillo shall, on behalf of Ocean, sign the deed in the form as attached hereto (the "Deed") to convey Ocean's Five Percent (5%) tenant in common interest in the Property to the Buyer.

3. The Parties agree that the Deed shall be recorded forthwith and in the event that the Deed requires correction in the future due to any title company or title underwriter matter in connection with any future financing or in connection with any future conveyance, Ocean, Fiorillo, their successors and assigns shall cooperate with the same and execute any necessary instruments to accomplish the same, without expense to Ocean, Fiorillo, their successors and assigns.

_SDB_
GF

_[signature]_
Ocean

_[signature]_
Fiorillo

4.  The Parties certify and acknowledge that they have read this Agreement carefully, that they have been afforded sufficient time to understand the terms and effects of this Agreement, and that they do, in fact, fully understand all of the terms and effects of this Agreement, that they have been advised to consult with legal counsel, and in fact have consulted legal counsel prior to signing this Agreement, and that they are voluntarily entering into and executing this Agreement.

5.  Effective upon the recording of the Deed and payment of the Purchase Price, excluding any obligations contained herein, the Buyer parties, their respective agents, successors and assigns and the Seller parties, their respective agents, successors and assigns, do hereby mutually discharge and release the other, their current, former and future tenant in common owners, officers, directors, shareholders, member, managers, employees, affiliates, attorneys, successors, and predecessors, of and from any and all actions, causes of action, suits, controversies, proceedings, and all liabilities of every name, nature and description, both in law and equity, which they may have ever had or may have, and consequences thereof, but which at this time are unknown or unanticipated and which may develop at some time in the future, and all unforeseen developments arising from known damages, relating in any way to any real property and the Property and/or businesses conducted at any real property or at the Property now or in the future. **Notwithstanding anything contained herein to the contrary, the foregoing mutual release shall in no way prohibit or limit Ocean and/or Fiorillo from pursuing George A. McLaughlin, III in connection with any claim or dispute which is currently pending or otherwise discovered and/or pursued in the future, it being the parties' intent that the foregoing mutual release shall in no way apply to a release of claims and/or disputes against the said George A. McLaughlin, III.**

6.  This Agreement and all such covenants, and agreements shall be binding upon and inure to the benefit of the heirs, executors, administrators, personal representatives, successors, and assigns of the Parties.

7.  The validity, interpretation, performance, and enforcement of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

8.  This Agreement may be executed by the Parties in multiple counterparts, each of which shall constitute an original.  This Agreement may be executed by facsimile, by .pdf or other electronic signature or by original.  A facsimile, .pdf or other electronic signature transmission of a signed original shall have the same effect as an original signature but shall not relieve any party from the obligation to deliver an executed original.

| _SDB_ | _O_ | _U_ |
|---|---|---|
| GF | Ocean | Fiorillo |

Page **3** of **3**

Signatures to follow on next page.

      IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by it selves or its duly authorized representatives effective as of the date first above written.

**GF FUNDING SWANSEA, LLC, a Massachusetts limited liability company**

By: _____    Dated:  January  _10_, 2022
Name:  Shane D. Brady
Title:  Authorized Signatory

**OCEAN INVESTMENTS HOLDINGS, LLC, a Massachusetts limited liability company**

By: _____    Dated:  January  _/_, 2022
Name:  Nicholas Fiorillo
Title:  Authorized Signatory

_____    Dated:  January  ___, 2022

Nicholas Fiorillo, Individually

_____    _____    _____
GF                 Ocean              Fiorillo

# EXHIBIT C

## PURCHASE AGREEMENT

## SWANSEA MALL PROPERTY

This Purchase (hereinafter "Agreement") is made by and between GF FUNDING SWANSEA, LLC, a Massachusetts limited liability company ("GF"), SWANSEA HOLDINGS, LLC, a Massachusetts limited liability company ("SH"), and SMI HOLDINGS, LLC, a New Hampshire limited liability Company ("SMI") (GF, SH, and SMI are collectively referred to herein as "Buyer") whose address is 670 N. Commercial Street, suite 303, Manchester, New Hampshire 03101 and OCEAN INVESTMENTS HOLDINGS, LLC, a Massachusetts limited liability company ("Ocean" or "Seller") whose address is 3 Kates Way, Harwichport, MA 02646, (collectively, "the Parties").

WHEREAS, GF, SH, SMI and Ocean are tenant in common owners of the real property located at 262 Swansea Mall Drive in Swansea, Massachusetts, formerly known as the Swansea Mall (the "Property") and the Property contains various business operations; and

WHEREAS, the Buyer desires to purchase Seller's Five Percent (5%) tenant in common interest in the Property.

NOW THEREFORE, in consideration of the agreements and covenants set forth herein, and intending to be legally bound, the Parties agree as follows:

1.  The Buyer shall pay the Seller the sum of Six Hundred Ninety Thousand Dollars ($690,000.00) (the "Purchase Price") payment will be effectuated by wire to Seller's attorney prior to Seller executing the deed. Seller's attorney shall hold the funds in his IOLATA account for the benefit of the Seller until the seller affixes his signature to the deed and the deed is filed in the Fall River District Registry of deeds. as such term is defined below. The Purchase Price shall be allocated as set forth in the Deed. The Seller shall record the Deed electronically on the day that this Agreement is fully signed. There shall be no prorations and the Buyer shall pay recording fees and the Massachusetts Transfer Tax in the amount of $3,146.40. The full performance of this Agreement shall also cancel any and all debt owed by Ocean related to the Property.

2.  Upon the full signing of this Agreement, Ocean shall sign the deed in the form as attached hereto (the "Deed") to convey Ocean's Five Percent (5%) tenant in common interest in the Property to the Buyer in the percentages and amounts as set forth in the Deed.

3.  The Parties agree that the Deed shall be recorded and in the event that the Deed requires correction in the future due to any title company or title underwriter matter in connection with any future financing or in connection with any future conveyance, Ocean, its successors

| SDB | | Do | O |
|---|---|---|---|
| GF | SH | SMI | Ocean |

Date Filed 5/13/2022 12:56 PM
Superior Court - Suffolk
Docket Number   Case 1:23-cv-00364-WES-PAS   Document 1-2   Filed 09/04/23   Page 34 of 84 PageID #: 49

Page 2 of 3

and assigns shall cooperate with the same and execute any necessary instruments to accomplish the same, without expense to Ocean, its successors and assigns.

4. The Parties certify and acknowledge that they have read this Agreement carefully, that they have been afforded sufficient time to understand the terms and effects of this Agreement, and that they do, in fact, fully understand all of the terms and effects of this Agreement, that they have been advised to consult with legal counsel, and in fact have consulted legal counsel prior to signing this Agreement, and that they are voluntarily entering into and executing this Agreement.

5. Effective upon the recording of the Deed and payment of the Purchase Price, excluding any obligations contained herein, the Buyer parties, their respective agents, successors and assigns and the Seller parties, their respective agents, successors and assigns, do hereby mutually discharge and release the other, their current, former and future tenant in common owners, officers, directors, shareholders, member, managers, employees, affiliates, successors, and predecessors, of and from any and all actions, causes of action, suits, controversies, proceedings, and all liabilities of every name, nature and description, both in law and equity, which they may have ever had or may have, and consequences thereof, but which at this time are unknown or unanticipated and which may develop at some time in the future, and all unforeseen developments arising from known damages, relating in any way to the Property and/or businesses conducted at the Property now or in the future.

6. This Agreement and all such covenants and agreements shall be binding upon and inure to the benefit of the heirs, executors, administrators, personal representatives, successors, and assigns of the Parties.

7. The validity, interpretation, performance, and enforcement of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

8. This Agreement may be executed by the Parties in multiple counterparts, each of which shall constitute an original. This Agreement may be executed by facsimile, by .pdf or other electronic signature or by original. A facsimile, .pdf or other electronic signature transmission of a signed original shall have the same effect as an original signature but shall not relieve any party from the obligation to deliver an executed original.

Signatures to follow on next page.

| | | | |
|---|---|---|---|
| GF | SH | SMI | Ocean |

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by it selves or its duly authorized representatives effective as of the date first above written.

GF FUNDING SWANSEA, LLC, a Massachusetts limited liability company

By: _____            Dated: January 10, 2022

Name: Shane D. Brady
Title: Authorized Signatory


SWANSEA HOLDINGS, LLC, a Massachusetts limited liability company

By: _____            Dated: January ___, 2022

Name: George McLaughlin, III
Title: Authorized Signatory


SMI HOLDINGS, LLC, a New Hampshire limited liability company

By:Dated: January2022 _____            Dated: January ___,

Name: Dick Anagnost
Title: Authorized Signatory


OCEAN INVESTMENTS HOLDINGS, LLC, a Massachusetts limited liability company

By: _____            Dated: January 11, 2022

Name: Nicholas Fiorillo
Title: Authorized Signatory


GF            SH            SMI            Ocean

Page 1 of 3

<u>PURCHASE AGREEMENT</u>

<u>SWANSEA MALL PROPERTY</u>

This Purchase (hereinafter "Agreement") is made by and between GF FUNDING SWANSEA, LLC, a Massachusetts limited liability company ("GF"), SWANSEA HOLDINGS, LLC, a Massachusetts limited liability company ("SH"), and SMI HOLDINGS, LLC, a New Hampshire limited liability Company ("SMI") (GF, SH, and SMI are collectively referred to herein as "Buyer") whose address is 670 N. Commercial Street, suite 303, Manchester, New Hampshire 03101 and OCEAN INVESTMENTS HOLDINGS, LLC, a Massachusetts limited liability company ("Ocean" or "Seller") whose address is 3 Kates Way, Harwichport, MA 02646, (collectively, "the Parties").

WHEREAS, GF, SH, SMI and Ocean are tenant in common owners of the real property located at 262 Swansea Mall Drive in Swansea, Massachusetts, formerly known as the Swansea Mall (the "Property") and the Property contains various business operations; and

WHEREAS, the Buyer desires to purchase Seller's Five Percent (5%) tenant in common interest in the Property.

NOW THEREFORE, in consideration of the agreements and covenants set forth herein, and intending to be legally bound, the Parties agree as follows:

1. The Buyer shall pay the Seller the sum of Six Hundred Ninety Thousand Dollars ($690,000.00) (the "Purchase Price") payment will be effectuated by wire to Seller's attorney prior to Seller executing the deed. Seller's attorney shall hold the funds in his IOLATA account for the benefit of the Seller until the seller affixes his signature to the deed and the deed is filed in the Fall River District Registry of deeds. as such term is defined below. The Purchase Price shall be allocated as set forth in the Deed. The Seller shall record the Deed electronically on the day that this Agreement is fully signed. There shall be no prorations and the Buyer shall pay recording fees and the Massachusetts Transfer Tax in the amount of $3,146.40. The full performance of this Agreement shall also cancel any and all debt owed by Ocean related to the Property.

2. Upon the full signing of this Agreement, Ocean shall sign the deed in the form as attached hereto (the "Deed") to convey Ocean's Five Percent (5%) tenant in common interest in the Property to the Buyer in the percentages and amounts as set forth in the Deed.

3. The Parties agree that the Deed shall be recorded and in the event that the Deed requires correction in the future due to any title company or title underwriter matter in connection with any future financing or in connection with any future conveyance, Ocean, its successors

_____    _____    _____    _____
GF            SH           SMI           Ocean

and assigns shall cooperate with the same and execute any necessary instruments to accomplish the same, without expense to Ocean, its successors and assigns.

4.    The Parties certify and acknowledge that they have read this Agreement carefully, that they have been afforded sufficient time to understand the terms and effects of this Agreement, and that they do, in fact, fully understand all of the terms and effects of this Agreement, that they have been advised to consult with legal counsel, and in fact have consulted legal counsel prior to signing this Agreement, and that they are voluntarily entering into and executing this Agreement.

5.    Effective upon the recording of the Deed and payment of the Purchase Price, excluding any obligations contained herein, the Buyer parties, their respective agents, successors and assigns and the Seller parties, their respective agents, successors and assigns, do hereby mutually discharge and release the other, their current, former and future tenant in common owners, officers, directors, shareholders, member, managers, employees, affiliates, successors, and predecessors, of and from any and all actions, causes of action, suits, controversies, proceedings, and all liabilities of every name, nature and description, both in law and equity, which they may have ever had or may have, and consequences thereof, but which at this time are unknown or unanticipated and which may develop at some time in the future, and all unforeseen developments arising from known damages, relating in any way to the Property and/or businesses conducted at the Property now or in the future.

6.    This Agreement and all such covenants and agreements shall be binding upon and inure to the benefit of the heirs, executors, administrators, personal representatives, successors, and assigns of the Parties.

7.    The validity, interpretation, performance, and enforcement of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

8.    This Agreement may be executed by the Parties in multiple counterparts, each of which shall constitute an original. This Agreement may be executed by facsimile, by .pdf or other electronic signature or by original. A facsimile, .pdf or other electronic signature transmission of a signed original shall have the same effect as an original signature but shall not relieve any party from the obligation to deliver an executed original.

Signatures to follow on next page.

_____        _____        _____        _____
GF                    SH                    SMI                    Ocean

Page 3 of 3

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by it selves or its duly authorized representatives effective as of the date first above written.

GF FUNDING SWANSEA, LLC, a Massachusetts limited liability company

By: _____    Dated: January ____, 2022

Name: Shane D. Brady
Title: Authorized Signatory

SWANSEA HOLDINGS, LLC, a Massachusetts limited liability company

By: _____    Dated: January 10, 2022

Name: George McLaughlin, III
Title: Authorized Signatory

SMI HOLDINGS, LLC, a New Hampshire limited liability company

By: Dated: January 2022    Dated: January ____,
_____

Name: Dick Anagnost
Title: Authorized Signatory

OCEAN INVESTMENTS HOLDINGS, LLC, a Massachusetts limited liability company

By: _____    Dated: January 4, 2022

Name: Nicholas Fiorillo
Title: Authorized Signatory

_____        _____        _____
GF                  SH                 SMI        Ocean

# EXHIBIT D



**SHAPIRO**
**DORRY**
**MASTERSON**
Limited Liability Company

ATTORNEYS AT LAW

| | | |
|---|---|---|
| **Victor Shapiro** | **William A. Dorry** | **Shawn M. Masterson** |
| vshapiro@sdmlawgroup.com | wdorry@sdmlawgroup.com | smasterson@sdmlawgroup.com |
| Admitted in MA, RI, CT, ME, NH, VT | Admitted in MA, RI | Admitted in MA, CT, NH, VT, RI |

Via Electronic Mail

March 26, 2022

Shane Brady
GF Funding Swansea, LLC
670 North Commercial Street
Suite 303
Manchester, NH 03101

George McLaughlin
Swansea Holdings, LLC
McLaughlin Brothers, P.C.
One Washington Mall, 16th Floor
Boston, MA 02108

Re:    Shoppes at Swansea, True Storage Swansea
       True Storage Bourne, True Storage Manchester,
       True Storage Wareham, True Storage New Bedford,
       True Storage Manchester, True Storage East Windsor, *et al*
       Demand to rescind January 11, 2022, transfer
       Massachusetts General Laws Chapter 93A Demand

Mr. Brady and Mr. McLaughlin:

This office represents Ocean Investment Holdings, LLC, Ocean Development Partners, LLC (a Rhode Island limited liability company) W-Lofts Association, LLC and Gotspace Company ("Ocean" or "Plaintiffs") in connection with the above referenced properties. Our firm has been engaged to take action against all parties for the tortuous actions against our clients that is explained in detail in this demand communication.

Upon information and belief the transfer of the properties listed above is immenint and whereas we intend to bring a civil action to enjoin said transfers unless you agree to an immediate standstill and safe harbor to mitigate our clients' damages.

As a result of the conduct by Shane Brady, George McLaughlin and their development companies Swansea Holdings, LLC, GF Funding Swansea, LLC, Parr, LLC and the various True Storage portfolio holding companies as listed in Exhibit A, (together "Defendants") and others acting in concert in what the facts will prove, The Brady-Mclaughlin "BME" Enterprise, which is perpetrating a sophisticated real estate embezzlement, extortionist loan to own financial lending scheme against Ocean that continues and is ongoing up and until this day where as all the

Defendants have been working in concert through a highly organized set of "sub-schemes" at various times to the financial determinant of the Plaintiffs as described below.

Plaintiff will demonstrate that Defendants committed numerous violations of the civil provisions of the **Racketeer Influenced and Corrupt Organizations ("RICO") Act (18 U.S.C. § 1961-1968**, and/or numerous state and federal law civil claims for fraud, conversion, extortion, breach of contract, tortuous interference of business contracts and relations, unjust enrichment, and/or breach of duty of loyalty, and have conspired to usurp the plaintiffs 100% fee simple right title interest in the 88 acres, 600,000 +/- square foot regional mall known as the Swansea Mall n/k/a Shoppes at Swansea, the True Storage N.E. Portfolio, True Storage Swansea, Trust Storage Bourne, True Storage Wareham. True Storage New Bedford, True Storage Manchester, True Storage East Winsor CT (the "Properties")

### Swansea Mall Redevelopment True Storage Self-Storage Portfolio Scheme

Where the Plaintiffs had previously entered into a progamatic joint-venture development agreement with Defendants in which the Plaintiffs sought out, procured and negotiated a substantially discounted purchase contracts for attractive real estate development opportunities, where often the Plaintiffs were successful in procuring heavily discounted strike prices for between $3,000,000 to as much as $15,000,000 less than what the distressed sellers and investors had already invested in the projects. Whereas as Defendants are now attempting to usurp Plaintiffs' share of some $100,000,000 of development profits.

Defendants originally agreed that Plaintiff would assign its rights in the Property in exchange for 33.3% stake in the new development partnerships that Plaintiff and the Defendants looked to pursue in both large scale mixed use redevelopment and self-storage opportunities. Whereas Defendants have now coerced Plaintiffs to "turn over" and surrender it's tenant in common ownership and upwards of $200,000,000 in actionable claims it has against the Defendants for damages. Where through Defendants' pattern of complex "bait and switch" sham joint venture partnership agreements that were presented to "bait" the Plaintiff into turning over 100% of its ownership rights in over 7 different extremely valuable redevelopment opportunities throughout New England, in the Towns of Bourne, Swansea, and New Bedford, Massachusetts, East Windsor Connecticut and Manchester New Hampshire.

Where Defendants did swindle the Plaintiffs out of these very valuable development projects and caused losses of tens of millions of dollars in development profits that would have been due the Plaintiffs exclusively. The Defendants' pattern of "bait and switch" promises of 1/3 stake that was to be granted to the Plaintiffs and promises to fund all costs and development expenses was never honored. The Plaintiffs have never been provided adequate consideration for their procurement efforts, investments and assignments of the development rights title, interests and benefits it granted to the Defendants as the partnership then received such benefit from the Plaintiffs. The Defendants are now withholding of outside $60,000,000 - $80,000,000 in profits from legitimate

national real estate development and self storage companies as the Defendants are looking to sell out from underneath the Plaintiffs. Where the Defendants "froze out" the Plaintiffs from enjoying the true value and profit from these multiple transfers. Where the Defendants continually promised to issue to the Plaintiffs, their 33 1/3 ownership in each of these retail, multi-family and self-storage developments. The Defendants have usurped these development projects by and through various real estate conveyance schemes to deprive Plaintiff of their 100% control and purchase and procurement rights that it controlled and now has been duped out of.

The Defendants from the onset, stripped the Plaintiffs *bona fide* offers, purchase and development rights in the various development projects and now the Defendants fraudulently induced Ocean into a contract for sale and a global release of it's rights to these retail, multi-family and self-storage developments that where all procured by the Plaintiffs. Whereas the Defendants never had any intention to honor or complete the joint venture agreements, and/or honor it's partnership agreements.

It has now been uncovered that the Defendants and other co-conspirators attempted to conduct a "Shame Closing" and convert an additional $65,000,000 in profit share away from the Plaintiff in the True Storage Portfolio Sale to Prime Storage Group and a national industrial developer in an immanent series of real estate closings this week. Where the Defendants are clearly attempting to pass "bad title" uttering fraudulent documents, negotiating sale and settlement contracts are withholding collectively upwards of $100,000,000 profit share from the Plaintiffs. The most recent extortion of the Plaintiffs by the Defendants was a sophisticated scheme to force the Plaintiffs to "turn over" the Plaintiffs right, title and interest in these valuable development projects and attempt to receive a "get out of jail free" global release from the Plaintiffs. The Defendants acts to usurp the Shoppes at Swansea and the True Storage Portfolio clearly put the Plaintiffs under unconscionable duress as they attempted to strip away the Plaintiffs claims to ownership and substantial profits. The Defendants concocted a "Shame Closing" and passing of bad contracts for deeds, where if the Plaintiffs did not turn over such releases of rights, title and claims it possessed, the Defendants would then carry through on their threats to financially and physical harm the Plaintiffs and then look to financially bankrupt, Nicholas Fiorillo.

The Defendants have now been exposed and it is clear they had zero intent to ever deliver what the Plaintiff had bargained for from the onset of the development partnership. The Defendants and their co-conspirators, in house attorneys and operatives secretly covered up, withheld and misrepresented numerous offers for sale and development opportunities, covered up financial malfeasance and embezzlement and has continued to not disclose the many multi-million dollar purchase contracts from Prime Storage and other national developers, where the Plaintiffs have claim to 33 1/3 % of the Shoppes at Swansea-True Storage and the other 6 True Storage Self-Storage properties the Plaintiffs and their other development companies, which have an ownership of that was developed over the last 5 years. The Defendants are attempting to usurp upwards of $65,000,000 in profit share from Plaintiff's rightful ownership in the Swansea properties and True Storage, and the 6 other True Storage properties that Brady has joint ventured with the Plaintiffs. The Plaintiffs intend to immediately file an action under civil provisions of the **Racketeer Influenced and Corrupt Organizations ("RICO") Act (18 U.S.C. § 1961-1968)** against the Defendants and others for their nefarious pattern of multi-million dollar real estate embezzlement scheme, that is being perpetrated by the BME Enterprise

1. It is our intention to promptly file suit to protect our client's interests, particularly to stop the pending sale(s) of the Shoppes at Swansea and True Storage Portfolio. We are also filing a separate action against Defendant Brady and his accomplices

for their fraudulent "bait & switch" scheme to usurp the Intellectual Property of "True Storage" away from the Plaintiffs in the summer of 2020. When Brady issued a "SHAM" - $10,000,000 loan commitment for the Plaintiffs to purchase and develop the Newport Beach Club, through a Receivership Sale. Where Brady induced the Plaintiffs to turn over www.truestorage.com and all related digital brands and trademark rights, that the Plaintiffs and Brady owned as equal partners.

2. Our investigation indicates that all the defendants have engaged in numerous fraudulent schemes devised to defraud and embezzle, extort and usurp our clients money, property and development rights of the various real estate developments in New England. Where it is clear the Defendants had no intentions of ever conveying 33 1/3 ownership and allowing the Plaintiffs to truly received the upwards of $100,000,000 share in development profits from the onset of the Plaintiffs development projects that were subsequently developed by the Defendants and the Plaintiffs. Whereas, the Defendants have been conspiring to defraud the Plaintiffs of its money, property, purchase and development rights and intellectual properties of True Storage, the True Storage Portfolio and the Shoppes at Swansea.

3. The Defendants continued pattern of extortion and embezzlement and the continued willingness to aide and abet the execution of a scheme and artifice to obtain monies, intellectual property and funds, real estate, development rights, credits, assets, securities and other property owned by, or under the custody and control of the Plaintiffs and their associated development corporations, by means of false and fraudulent pretenses, representations and promises in that they fraudulently obtained monies amassing to over $100,000,000 profit share, from the usurping of the Plaintiffs rightfully development and ownership rights from the above named properties by way of forging various interstate wire and conveyance documents and converting funds away from the Plaintiffs.

4. The fraudulent inducement and coercion of the Plaintiffs by the Defendants, over a matter of years, clearly constitutes a pattern of racketeering acts that the Defendants set out to purposefully compromise the Plaintiffs ownership interests in it's real estate development projects of retail, multi-family, self-storage and digital branding rights it possessed. Where it is clear the defendants have caused and continuous to cause financial losses of development profits and residual commercial real estate income. Where the Plaintiffs will seek upwards of $100,000,000 dollars in actual, punitive and proximate damages against the Defendants.

5. As well as the RICO violations set forth above, we assess the Defendants conduct as violations numerous state and federal laws along with tortious interference in contracts for deed, sale of businesses, lending practices, promises to extend credit, fraudulent purchase contracts, manipulation outside purchase and sale contracts, fraudulent and predatory practices of numerous "bait & switch" partnership and loan terms, and exacting loan charges amounting to usurious rates of interest and costs to the determinate of the Plaintiffs. All of this amounts to actionable fraud and interference with our client's rights within the fraud statues of civil RICO. In the

event that we are forced to litigate our claims, we will be seeking compensatory and punitive damages as trebled.

6. The Plaintiffs were fraudulently induced and acted under duress to execute the deeds to transfer of the subject property and release of claims against the Defendants and their co-conspirators this past January 2022 under fear and duress, financial and economic and fear of physical harm by Defendants. The Plaintiffs clearly did not receive adequate consideration when it assigned it's 100% development and control at the initial joint ventures acquisitions and now has yet again been extorted and threatened to turn over the transfer tens of millions of dollars of profits and development rights and release of claims it has against the Defendants. Such transfers and release of claims are therefore invalid and was again extorted away from the Plaintiffs 33 1/3 % of the profit in the sale of the Shoppes at Swansea and the True Storage Portfolio to Prime Storage.

The Plaintiffs hereby demand the transfer of the Property evidenced by the Special Warranty Deeds dated January 11, 2022, and recorded in the Bristol County Registry of Deeds (Fall River) in Book 10885 at Page 193 and Book 10885 at Page 197, be rescinded, forthwith and 100% ownership of the Shoppes at Swansea and True Storage Swansea be returned to the Plaintiffs. In addition, the True Storage Portfolio sale been enjoined indefinitely.

In further support, The Plaintiff state as follows:

E.F.1. On March 6, 2019, on behalf of the "plaintiffs entered into binding Letter(s) of Intent ("LOI") with the seller of the Mall Properties, Carlyle Partners, LLC, to purchase the two parcel, 88 acre, 650,000 square for, dark mall, for approximately $5.25 million and was successful in negotiating this great purchase for the 100% benefit of the Plaintiffs development company Ocean Holdings

E.F.2. Plaintiff's agreed to joint venture with Brady, which partnership was to be Brady, and Plaintiffs as equal, tenant in common 33 1/3 owners each of the Mall Property with the other 1/3 going to a more experienced and less controversial developer and Brady and the Plaintiffs being 50/50 owners of the True storage at Swansea parcel. The exchange between the parties was for the Plaintiffs to grant 100% control and assignment of contract purchase rights, almost ($15 million below what the bank was owed on the Property), to Defendant Brady and for Defendants immediately agreed to front 100% of the capital needed for the entire development and investment to develop the upwards of $150,000,000 of the mixed use lift style center and Swansea Town Hall that the Plaintiff and the other development partner envisioned for the as the project

E.F.3. Plaintiffs had initial extolled to Brady the benefits of having attorney Mclaughlin, as our permitting and zoning attorney. Plaintiffs also tapped McLaughlin legal consult, to advise on the deal with the two other partners. As Mclaughlin had now seen the tremendous value in the Plaintiffs development opportunity he continually purported himself as

Plaintiffs "secret investor" now demanding he would lend money to the Plaintiffs for a 10% return on what ever money the Plaintiffs may have needed. Where Defendant Mclaughlin often  bragged about how he was sophisticated and very experienced real estate lawyer/litigator and private money lender. Specifically, Plaintiff mentioned McLaughlin's reputation in obtaining successful results for clients and wrote "George is the guy to get us a supermarket and whatever else we need on that site!!! The best dam 'land use bazooka litigator' you can get!"

E.F.4.  Through many communications with McLaughlin, he never stated that he was providing the Plaintiff and the other partners with anything else other than legal advice to and/or for Plaintiffs and the newly formed holding partnership. As the multi-million dollar closing was fast approaching, Mclaughlin, was insistent that he lend some part of the funds needed and to tell Brady that he "Mclaughlin" had the Plaintiffs end covered. The Plaintiffs now had too much money now available committed to be invested. AS the Plaintiffs with  upwards of almost $7 million that Brady had committed to the Plaintiff's interest and financial investment into the deal, Brady had already committed. Defendants Brady and Mclaughlin usurp upwards of $100,000,000 in development and real estate value away from the Plaintiff

E.F.5.  Only did both Brady and Mclaughlin, "bait and switch" Plaintiffs at the last minute, where now Mclaughlin had demanded 20% stake and Brady demanded another 8% stake and Plaintiffs was forced into accepting a mere 5% stake, when the dust settled at the table. Whereas the true 33% stake is now worth well in excess of $30 million dollars in eventual development profits, long term cash flow and millions of dollars in tax benefits. Plaintiffs has never received the full and final consideration for the Plaintiffs assignment of it's 100% beneficial contract rights. This past winter, at the direct tactical control Brady and his Attorney Partner, George Mclaughlin, have attempted to silence Plaintiff's claims to the entire project.

E.F.6.  Where McLaughlin had tried to extort over $950,000 in cash from Plaintiffs, that was not due his office as he sent demand letter at the direction of Brady where they threatened usurp Plaintiff's 5% stake and financial bankrupt Plaintiffs, seeking collection for almost $1 million by Brady, who demanded Plaintiffs  pay or else  forfeit his stake in the Property. Plaintiffs was thus induced and coerced into executed an agreement to transfer his interest in the Property for a *de minimus* amount.

The above facts support Plaintiffs' claims that they were coerced and defrauded into executing the various assignments of extremely valuable purchase and development rights, contracts for land, and intellectual property involving the Swansea Mall development and the New England True Storage portfolio.

As a result of Brady, McLaughlin and all other defendants' actions, the Plaintiffs have suffered damages in excess of $100,000.000.00.

The Defendants have violated G.L. c. 93A in the following respects, *inter alia;*

- o By breaching the fiduciary duty to Plaintiff in violation of G.L. c 93A §2, and 940 C.M.R. §3.16, by not representing the best interest of Plaintiffs and Ocean;
- o By failing to provide the required duty of care and breaching said duty of care, causing damage to Plaintiff in violation of G.L. c 93A §2, and 940 C.M.R. §3.12;
- o By engaging in fraud in misrepresenting the value of the Property causing damage to Plaintiff in violation of G.L. c 93A §2, and 940 C.M.R. §3.13;
- o By self-dealing, causing damage to Plaintiff in violation of violation of G.L. c 93A §2, and 940 C.M.R. §3.13

This letter shall serve as formal demand upon Shane Brady. George McLaughlin, III and all other named defendants to cease and desist in the proposed sale of the properties and sale of any of the other True Storage Portfolio listed in this demand. (See Exhibit A) Plaintiff intends to seek relief to maintain the *status quo* and avoid further harm by way of seeking an emergency preliminary and permanent injunction, filing a *lis pendens*, so now levied along with the demand letter against all properties referenced in this  demand for specific performance, and/or writ of attachments to the extent allowed by law.

Unless Plaintiffs and the Defendants agree to a standstill agreement NO LATER THAN 2 PM TUESDAY MARCH 29, 2022,  to allow the parties to further resolve the issues set forth above, Plaintiffs intend to file a lawsuit against Defendants and any party acting in connection with Defendants, including Prime Group Holdings or any of its affiliates, for turn over, specific performance, damages  and other applicable relief in order to protect and preserve its rights to the Property in excess of $100,000,000.

Plaintiffs reserve their rights to exercise, in such manner as they elect, any one or more of the remedies available to them pursuant any agreement(s) between and among the parties or Prime Storage and any other outside developer that has entered into LOI or purchase contacts to the sell the Plaintiffs' properties and claims to the True Storage Portfolio and its self-storage assets and intellectual property that the Plaintiff has a 33.33% or more ownership claim to as otherwise available at law or in equity and nothing contained herein shall constitute a waiver of any rights of Plaintiffs and/to pursue such rights and remedies.

Defendants are hereby advised that negotiations or other discussions, if any, between Defendants and Plaintiffs or their respective agents or representatives that are not memorialized in writing, shall not constitute a waiver of Plaintiffs' rights and remedies under any agreement, or otherwise, at law or in equity.

Defendants have until Tuesday, March 29, at 2 pm to agree to a standstill and agree not to convey any property or business or enter into any new financial loans and or refinance agreements pertaining to any and all of the subject properties.

The specific enumeration of Defendants' actions contained in this letter shall not constitute a waiver of any or all other claims or actions against Defendants, which may now or hereafter exist under the Agreement, including any asserted in prior notices or correspondence.

Regards,

Shawn M. Masterson

Cc:  Kevin Salvaggio, Esq.  Special Counsel to Plaintiffs.

**Massachusetts Properties**

966 Shawmut Ave
New Bedford, Massachusetts

969 Shawmut Ave
New Bedford, Massachusetts

170 Clay Pond Road
Bourne, Massachusetts

2625 Swansea Mall Drive
Swansea, Massachusetts

34 Forest Street
Attleboro, Massachusetts

**Connecticut Properties**

10 Prospect Hill Terrace
East Windsor, Connecticut

**New Hampshire Properties**

665 South Willow Street
Manchester, New Hampshire

The above described events shall be defined as the "Litigation Event." You may have in your possession, custody, or control documents, information, and electronically or digitally stored information relevant to the Litigation Event. You are under a legal duty to preserve, retain, and protect all possibly relevant evidence, including electronic evidence, once litigation is reasonably anticipated or has commenced. The failure to preserve and retain evidence, including but not limited to the electronic data outlined in this notice below, constitutes spoliation of evidence and can subject You to sanctions by the court should the above-referenced matter proceed to litigation.

This notice applies to both on and off-site computer systems, removable electronic media, cell phones, plus all computer systems, services, and devices (including remote access and wireless devices) used by You. For purposes of this notice, electronic data or electronic evidence shall include, but not be limited to, all electronically stored documents, records, images, graphics, recordings, text files (including word processing documents), presentation files (such as PowerPoint), spread sheets (such as Excel), e-mail and other electronic communications files (such as Outlook) and information concerning e-mail files (including logs of e-mail history and usage, header information, and deleted files), internet history files and preferences, social media, blog postings, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, text messages, contact managers, computer system activity logs, and all file fragments and backup files containing electronic data.

Specifically, You are instructed not to destroy any hard copy materials related or referring to the Litigation Event and not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic evidence relevant to the Litigation Event. You are further instructed to take reasonable efforts to preserve all such material and data.

The importance of immediate action cannot be overstated. Electronically stored information is easily corrupted, altered, and deleted in normal daily operations. Even booting a drive, running an application, or reviewing a document can permanently alter evidence. An important method for preserving data in its original state is to have a forensic image (mirror image or clone image) made of pertinent hard drives of both office and home computers used for business and of network servers. This image captures all current data, including the background or metadata about each document. Simply copying data to a CD-ROM or other common backup medium is not adequate. For each captured image file, record and identify the person creating the image and the date of creation. Secure the file to prevent subsequent alteration or corruption and create a chain of custody log. Once the forensic data image file is created, the pertinent computer or other device can be placed back into operation.

This preservation notice covers the above items and information between the following dates: January 1, 2017, to present. Follow the above procedures to preserve electronic information created after this notice.

# EXHIBIT E

### <u>Affidavit under M.G.L. c. § 5B (Affiant not an Attorney)</u>

Property Address:
Parcel One (Mall Parcel) 262 Swansea Mall Drive
Maps 7, Lot 1 Town of Swansea Bristol County
Commonwealth of Massachusetts
Parcel Two (Wastewater Treatment Plant) the
land in Swansea, Bristol County, Massachusetts
situated at 788 Wood Road

Book _____
Page _____

I, Nicholas Fiorillo, Manager of Ocean Investment Holdings, LLC, a Massachusetts limited liability company ("Grantor") of Harwichport, Massachusetts, having personal knowledge of the facts herein stated, under oath depose and say as follows:

1       On January 11, 2022, Grantor conveyed (the "Conveyance") that certain real property situated in Bristol County, Massachusetts, known as Parcel One and Parcel Two (the "Property") to GF Funding Swansea, LLC, Swansea Holdings, LLC and SMI Holdings, LLC (collectively "Grantee"), as evidence by that certain Special Warranty Deed with an effective date of January 11, 2022, recorded in the Bristol County Registry of Deeds at Book 10885, Page 193, on January 11, 2022.

2       The Property is legally described on Exhibit A attached hereto and incorporated herein.

3       The Conveyance was not subject to the provisions of M.G.L. Chapter 62C § 51 and the transfer is not all or substantially all of the Grantor's assets in Massachusetts.

Signatures on next page.

The foregoing Affidavit was executed under penalties of perjury this _____ day of _____, 2022.

**OCEAN INVESTMENT HOLDINGS LLC**

By:_____
       Nicholas Fiorillo, Manager
       Duly Authorized
       And Individually

State/Commonwealth of _____        _____,ss:

On _____, 2022 before me, the undersigned notary public, personally appeared Nicholas Fiorillo, proved to me through satisfactory evidence of identification, which was a Massachusetts drivers license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose as Manager of Ocean Investment Holdings LLC and on his individual behalf.

_____
Notary Public/Justice of the Peace
My Commission expires

EXHIBIT A

The Grantor's Five Percent (5%) tenant in common interest in and to that certain real property, together with all improvements thereon, situated in Bristol County, Massachusetts that is described as follows:

**Parcel One (Mall Parcel)**

The land in Swansea, Bristol County, Massachusetts, situated on Swansea Mall Road, and being shown as "Remaining Parcel 1" on a plan entitled, "Approval Not Required Plan of Land Carlyle Swansea Partners, LLC 262 Swansea Mall Drive Maps 7, Lot 1, Town of Swansea Bristol County, Commonwealth of Massachusetts, " dated January 14, 2016, prepared by Control Point Associates, Inc., and recorded with the Bristol Fall River District Registry of Deeds in Plan Book 158, Page 32, to which plan reference is hereby made for a more particular description.

"Remaining Parcel 1" contains 2,786,631 S.F. or 63.972 ± acres, according to said plan. Together with the benefit of the following:

1.     Rights and easements with respect to sign access as set forth in Easement Agreement dated January 11, 1977 among Darswan, Inc. and United States Gypsum Company (collectively, Granter) and Darswan, Inc. and Arlen Management Corp. d/b/a Swansea Mall Joint Venture (collectively, Grantee), recorded in Book 1168, Page 180; as ratified and amended by Sign Access Easement Agreement dated November 14, 2103 by and between Gator Swansea Property, LLC and Carlyle Swansea Partners, LLC, recorded in Book 8369, Page 214;

2.     Reciprocal Easement Agreement by and between Diversified Equity Corporation of Illinois, Inc. and FirstFed Mortgage Corporation dated March 17, 1998, recorded in Book 3415, Page 221.

3.     Sign easement as reserved in Deed from Carlyle Swansea Partners, LLC to JMAR Realty, LLC dated February 7, 2014, recorded in Book 8416, Page 259.

4.     Terms and provisions of Easements with Covenants and Restrictions Affecting Land ("ECR") dated as of June 12, 2012 between Wal-Mart Stores East, LP and Carlyle Swansea Partners, LLC, recorded in Book 7960, Page 51; as amended by First Amendment to Easements with Covenants and Restrictions Affecting Land dated as of February 7, 2014, recorded in Book 8416, Page 140.

5.     Terms and provisions of Reciprocal Easement Agreement dated November 14, 2013 by and between Carlyle Swansea Partners, LLC and Gator Swansea Property, LLC, recorded in Book 8369, Page 163.

6.    Terms and provisions of Declaration of Easements dated February 7, 2014 by
Carlyle Swansea Partners, LLC, recorded in Book 8416, Page 193.

**Parcel Two (Wastewater Treatment Plant)**

The land in Swansea, Bristol County, Massachusetts, situated at 788 Wood Road,
and being shown as "Proposed Parcel 1" and "Proposed Parcel 2" on a plan entitled,
"Plan of Land in Swansea, Massachusetts, Prepared For: Bohler Engineering," dated
October 30, 2013, last revised October 31, 2013, prepared by Control Point
Associates, Inc., and recorded with the Bristol Fall River District Registry of Deeds
in Plan Book 155, Page 30, to which plan reference is hereby made for a more
particular description.

"Proposed Parcel 1" contains 452,804 + S.F. or 10.39 + acres,

according to said plan. "Proposed Parcel 2" contains 951,424 + S.F. or

21.84 + acres, according to said plan.

## Affidavit under M.G.L. c. § 5B (Affiant not an Attorney)

Property Address:
True Storage Condominium, 262 Swansea Mall Drive
Condominium Units 1, 2 and 3, Town of Swansea
Bristol County, Commonwealth of Massachusetts

Book _____
Page _____

I, Nicholas Fiorillo, Manager of Ocean Investment Holdings, LLC, a Massachusetts limited liability company ("Grantor") of Harwichport, Massachusetts, having personal knowledge of the facts herein stated, under oath depose and say as follows:

1    On January 11, 2022, Grantor conveyed (the "Conveyance") that certain real property situated in Bristol County, Massachusetts, known as Units 1, 2 and 3 of True Storage Condominium (the "Property") to GF Funding Swansea, LLC ("Grantee"), as evidence by that certain Special Warranty Deed with an effective date of January 11, 2022, recorded in the Bristol County Registry of Deeds at Book 10885, Page 197, on January 11, 2022.

2    The Property is legally described on Exhibit A attached hereto and incorporated herein.

3    The Conveyance was not subject to the provisions of M.G.L. Chapter 62C § 51 and the transfer is not all or substantially all of the Grantor's assets in Massachusetts.

Signatures on next page.

The foregoing Affidavit was executed under penalties of perjury this _____ day of _____, 2022.

**OCEAN INVESTMENT HOLDINGS LLC**

By:_____

Nicholas Fiorillo, Manager
Duly Authorized
And Individually

State/Commonwealth of _____         _____,ss:

On _____, 2022 before me, the undersigned notary public, personally appeared Nicholas Fiorillo, proved to me through satisfactory evidence of identification, which was a Massachusetts drivers license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose as Manager of Ocean Investment Holdings LLC and on his individual behalf.

_____
Notary Public/Justice of the Peace
My Commission expires

EXHIBIT A

The Grantor's entire Five Percent (5%) tenant in common interest in and to those three (3) certain condominium units located in the Town of Swansea, Bristol County, and Commonwealth of Massachusetts, more particularly described as follows:

Unit No. 1, Unit No. 2 and Unit No. 3 of the True Storage Condominium, a condominium located at 262 Swansea Mall Road, Swansea, Bristol County, Massachusetts, created pursuant to and subject to the provisions of Chapter 183A of the General Laws of Massachusetts, by Master Deed dated May 1, 2020 and recorded with the Bristol County Registry of Deeds at Book 10090, Page 247 (the "Master Deed").

Said Unit is conveyed together with the following undivided percent interest appertaining to said Units in the common areas and facilities of said Condominium: Unit 1 – 29.9% Unit 2 – 36.5% and Unit 3 – 33.6%.

Reference is hereby made to the plans entitled "Condominium Site Plan – True Storage", by Control Point Associates, Inc. dated April 2020 consisting of one (1) sheet bearing the verified statement of Gerry L. Holdright, Professional Land Surveyor recorded May 1, 2020 with said Deeds in Plan Book 165, Page 6, along with the above-mentioned Master Deed and floor plans.

Subject to the terms and conditions of the Master Deed and the True Storage Condominium Trust, dated May 1, 2020 and recorded in the Bristol County Registry of Deeds at Book 10090, Page 263.

Subject also to all other matters of record, including, without limitation, all easements, all restrictions and easements with covenants and restrictions affecting land, all reciprocal easements and all declarations of easements.

## <u>Affidavit under M.G.L. c. § 5B (Affiant not an Attorney)</u>

Property Address:
Parcel One (Mall Parcel) 262 Swansea Mall Drive
 Maps 7, Lot 1 Town of Swansea Bristol County
Commonwealth of Massachusetts
Parcel Two (Wastewater Treatment Plant) the
land in Swansea, Bristol County, Massachusetts
situated at 788 Wood Road

Book _____
Page _____

      I, Nicholas Fiorillo, Manager of Ocean Investment Holdings, LLC, a Massachusetts limited liability company ("Grantor") of Harwichport, Massachusetts, having personal knowledge of the facts herein stated, under oath depose and say as follows:

1      On January 11, 2022, Grantor conveyed (the "Conveyance") that certain real property situated in Bristol County, Massachusetts, known as Parcel One and Parcel Two (the "Property") to GF Funding Swansea, LLC, Swansea Holdings, LLC and SMI Holdings, LLC (collectively "Grantee"), as evidence by that certain Special Warranty Deed with an effective date of January 11, 2022, recorded in the Bristol County Registry of Deeds at Book 10885, Page 193, on January 11, 2022.

2      The Property is legally described on Exhibit A attached hereto and incorporated herein.

3      The Conveyance was not subject to the provisions of M.G.L. Chapter 62C § 51 and the transfer is in the ordinary course of business of the Grantor.

Signatures on next page.

The foregoing Affidavit was executed under penalties of perjury this _____ day of
_____, 2022.

**OCEAN INVESTMENT HOLDINGS LLC**

By:_____
       Nicholas Fiorillo, Manager
       Duly Authorized
        And Individually

State/Commonwealth of _____          _____,ss:

On _____, 2022 before me, the undersigned notary public, personally appeared
Nicholas Fiorillo, proved to me through satisfactory evidence of identification, which was a
Massachusetts drivers license, to be the person whose name is signed on the preceding or attached
document, and acknowledged to me that he signed it voluntarily for its stated purpose as Manager
of Ocean Investment Holdings LLC and on his individual behalf.

_____
Notary Public/Justice of the Peace
My Commission expires

EXHIBIT A

The Grantor's Five Percent (5%) tenant in common interest in and to that certain real property, together with all improvements thereon, situated in Bristol County, Massachusetts that is described as follows:

**Parcel One (Mall Parcel)**

The land in Swansea, Bristol County, Massachusetts, situated on Swansea Mall Road, and being shown as "Remaining Parcel 1" on a plan entitled, "Approval Not Required Plan of Land Carlyle Swansea Partners, LLC 262 Swansea Mall Drive Maps 7, Lot 1, Town of Swansea Bristol County, Commonwealth of Massachusetts, " dated January 14, 2016, prepared by Control Point Associates, Inc., and recorded with the Bristol Fall River District Registry of Deeds in Plan Book 158, Page 32, to which plan reference is hereby made for a more particular description.

"Remaining Parcel 1" contains 2,786,631 S.F. or 63.972 ± acres, according to said plan. Together with the benefit of the following:

1.      Rights and easements with respect to sign access as set forth in Easement Agreement dated January 11, 1977 among Darswan, Inc. and United States Gypsum Company (collectively, Granter) and Darswan, Inc. and Arlen Management Corp. d/b/a Swansea Mall Joint Venture (collectively, Grantee), recorded in Book 1168, Page 180; as ratified and amended by Sign Access Easement Agreement dated November 14, 2103 by and between Gator Swansea Property, LLC and Carlyle Swansea Partners, LLC, recorded in Book 8369, Page 214;

2.      Reciprocal Easement Agreement by and between Diversified Equity Corporation of Illinois, Inc. and FirstFed Mortgage Corporation dated March 17, 1998, recorded in Book 3415, Page 221.

3.      Sign easement as reserved in Deed from Carlyle Swansea Partners, LLC to JMAR Realty, LLC dated February 7, 2014, recorded in Book 8416, Page 259.

4.      Terms and provisions of Easements with Covenants and Restrictions Affecting Land ("ECR") dated as of June 12, 2012 between Wal-Mart Stores East, LP and Carlyle Swansea Partners, LLC, recorded in Book 7960, Page 51; as amended by First Amendment to Easements with Covenants and Restrictions Affecting Land dated as of February 7, 2014, recorded in Book 8416, Page 140.

5.      Terms and provisions of Reciprocal Easement Agreement dated November 14, 2013 by and between Carlyle Swansea Partners, LLC and Gator Swansea Property, LLC, recorded in Book 8369, Page 163.

6.    Terms and provisions of Declaration of Easements dated February 7, 2014 by Carlyle Swansea Partners, LLC, recorded in Book 8416, Page 193.

**Parcel Two (Wastewater Treatment Plant)**

The land in Swansea, Bristol County, Massachusetts, situated at 788 Wood Road, and being shown as "Proposed Parcel 1" and "Proposed Parcel 2" on a plan entitled, "Plan of Land in Swansea, Massachusetts, Prepared For: Bohler Engineering," dated October 30, 2013, last revised October 31, 2013, prepared by Control Point Associates, Inc., and recorded with the Bristol Fall River District Registry of Deeds in Plan Book 155, Page 30, to which plan reference is hereby made for a more particular description.

"Proposed Parcel 1" contains 452,804 + S.F. or 10.39 + acres,

according to said plan. "Proposed Parcel 2" contains 951,424 + S.F. or

21.84 + acres, according to said plan.

## <u>Affidavit under M.G.L. c. § 5B (Affiant not an Attorney)</u>

Property Address:
True Storage Condominium, 262 Swansea Mall Drive
Condominium Units 1, 2 and 3, Town of Swansea
Bristol County, Commonwealth of Massachusetts

Book _____
Page _____

     I, Nicholas Fiorillo, Manager of Ocean Investment Holdings, LLC, a Massachusetts limited liability company ("Grantor") of Harwichport, Massachusetts, having personal knowledge of the facts herein stated, under oath depose and say as follows:

1     On January 11, 2022, Grantor conveyed (the "Conveyance") that certain real property situated in Bristol County, Massachusetts, known as Units 1, 2 and 3 of True Storage Condominium (the "Property") to GF Funding Swansea, LLC ("Grantee"), as evidence by that certain Special Warranty Deed with an effective date of January 11, 2022, recorded in the Bristol County Registry of Deeds at Book 10885, Page 197, on January 11, 2022.

2     The Property is legally described on Exhibit A attached hereto and incorporated herein.

3     The Conveyance was not subject to the provisions of M.G.L. Chapter 62C § 51 and the transfer is in the ordinary course of business of the Grantor.

Signatures on next page.

The foregoing Affidavit was executed under penalties of perjury this _____ day of
_____, 2022.

**OCEAN INVESTMENT HOLDINGS LLC**

By:_____
         Nicholas Fiorillo, Manager
         Duly Authorized
         And Individually

State/Commonwealth of _____              _____,ss:

On _____, 2022 before me, the undersigned notary public, personally appeared
Nicholas Fiorillo, proved to me through satisfactory evidence of identification, which was a
Massachusetts drivers license, to be the person whose name is signed on the preceding or attached
document, and acknowledged to me that he signed it voluntarily for its stated purpose as Manager
of Ocean Investment Holdings LLC and on his individual behalf.

_____
Notary Public/Justice of the Peace
My Commission expires

EXHIBIT A

 The Grantor's entire Five Percent (5%) tenant in common interest in and to those three (3) certain condominium units located in the Town of Swansea, Bristol County, and Commonwealth of Massachusetts, more particularly described as follows:

Unit No. 1, Unit No. 2 and Unit No. 3 of the True Storage Condominium, a condominium located at 262 Swansea Mall Road, Swansea, Bristol County, Massachusetts, created pursuant to and subject to the provisions of Chapter 183A of the General Laws of Massachusetts, by Master Deed dated May 1, 2020 and recorded with the Bristol County Registry of Deeds at Book 10090, Page 247 (the "Master Deed").

Said Unit is conveyed together with the following undivided percent interest appertaining to said Units in the common areas and facilities of said Condominium: Unit 1 – 29.9% Unit 2 – 36.5% and Unit 3 – 33.6%.

Reference is hereby made to the plans entitled "Condominium Site Plan – True Storage", by Control Point Associates, Inc. dated April 2020 consisting of one (1) sheet bearing the verified statement of Gerry L. Holdright, Professional Land Surveyor recorded May 1, 2020 with said Deeds in Plan Book 165, Page 6, along with the above-mentioned Master Deed and floor plans.

Subject to the terms and conditions of the Master Deed and the True Storage Condominium Trust, dated May 1, 2020 and recorded in the Bristol County Registry of Deeds at Book 10090, Page 263.

Subject also to all other matters of record, including, without limitation, all easements, all restrictions and easements with covenants and restrictions affecting land, all reciprocal easements and all declarations of easements.

## Affidavit under M.G.L. c. § 5B (Affiant not an Attorney)

Property Address:
Parcel One (Mall Parcel) 262 Swansea Mall Drive
Maps 7, Lot 1 Town of Swansea Bristol County
Commonwealth of Massachusetts
Parcel Two (Wastewater Treatment Plant) the
land in Swansea, Bristol County, Massachusetts
situated at 788 Wood Road

Book _____
Page _____

I, Nicholas Fiorillo, Manager of Ocean Investment Holdings, LLC, a Massachusetts limited liability company ("Grantor") of Harwichport, Massachusetts, having personal knowledge of the facts herein stated, under oath depose and say as follows:

1    On January 11, 2022, Grantor conveyed (the "Conveyance") that certain real property situated in Bristol County, Massachusetts, known as Parcel One and Parcel Two (the "Property") to GF Funding Swansea, LLC, Swansea Holdings, LLC and SMI Holdings, LLC (collectively "Grantee"), as evidence by that certain Special Warranty Deed with an effective date of January 11, 2022, recorded in the Bristol County Registry of Deeds at Book 10885, Page 193, on January 11, 2022.

2    The Property is legally described on Exhibit A attached hereto and incorporated herein.

3    The Conveyance was not subject to the provisions of M.G.L. Chapter 62C § 51 and Grantor was not classified for 2022 as a corporation for federal income tax purposes.

Signatures on next page.

The foregoing Affidavit was executed under penalties of perjury this _____ day of
_____, 2022.

                                        **OCEAN INVESTMENT HOLDINGS LLC**


                                        By:_____
                                             Nicholas Fiorillo, Manager
                                             Duly Authorized
                                             And Individually


State/Commonwealth of _____         _____,ss:


On _____, 2022 before me, the undersigned notary public, personally appeared
Nicholas Fiorillo, proved to me through satisfactory evidence of identification, which was a
Massachusetts drivers license, to be the person whose name is signed on the preceding or attached
document, and acknowledged to me that he signed it voluntarily for its stated purpose as Manager
of Ocean Investment Holdings LLC and on his individual behalf.


                                        _____
                                        Notary Public/Justice of the Peace
                                        My Commission expires

EXHIBIT A

The Grantor's Five Percent (5%) tenant in common interest in and to that certain real property, together with all improvements thereon, situated in Bristol County, Massachusetts that is described as follows:

**Parcel One (Mall Parcel)**

The land in Swansea, Bristol County, Massachusetts, situated on Swansea Mall Road, and being shown as "Remaining Parcel 1" on a plan entitled, "Approval Not Required Plan of Land Carlyle Swansea Partners, LLC 262 Swansea Mall Drive Maps 7, Lot 1, Town of Swansea Bristol County, Commonwealth of Massachusetts," dated January 14, 2016, prepared by Control Point Associates, Inc., and recorded with the Bristol Fall River District Registry of Deeds in Plan Book 158, Page 32, to which plan reference is hereby made for a more particular description.

"Remaining Parcel 1" contains 2,786,631 S.F. or 63.972 ± acres, according to said plan. Together with the benefit of the following:

1.      Rights and easements with respect to sign access as set forth in Easement Agreement dated January 11, 1977 among Darswan, Inc. and United States Gypsum Company (collectively, Granter) and Darswan, Inc. and Arlen Management Corp. d/b/a Swansea Mall Joint Venture (collectively, Grantee), recorded in Book 1168, Page 180; as ratified and amended by Sign Access Easement Agreement dated November 14, 2103 by and between Gator Swansea Property, LLC and Carlyle Swansea Partners, LLC, recorded in Book 8369, Page 214;

2.      Reciprocal Easement Agreement by and between Diversified Equity Corporation of Illinois, Inc. and FirstFed Mortgage Corporation dated March 17, 1998, recorded in Book 3415, Page 221.

3.      Sign easement as reserved in Deed from Carlyle Swansea Partners, LLC to JMAR Realty, LLC dated February 7, 2014, recorded in Book 8416, Page 259.

4.      Terms and provisions of Easements with Covenants and Restrictions Affecting Land ("ECR") dated as of June 12, 2012 between Wal-Mart Stores East, LP and Carlyle Swansea Partners, LLC, recorded in Book 7960, Page 51; as amended by First Amendment to Easements with Covenants and Restrictions Affecting Land dated as of February 7, 2014, recorded in Book 8416, Page 140.

5.      Terms and provisions of Reciprocal Easement Agreement dated November 14, 2013 by and between Carlyle Swansea Partners, LLC and Gator Swansea Property, LLC, recorded in Book 8369, Page 163.

6.     Terms and provisions of Declaration of Easements dated February 7, 2014 by Carlyle Swansea Partners, LLC, recorded in Book 8416, Page 193.

**Parcel Two (Wastewater Treatment Plant)**

The land in Swansea, Bristol County, Massachusetts, situated at 788 Wood Road, and being shown as "Proposed Parcel 1" and "Proposed Parcel 2" on a plan entitled, "Plan of Land in Swansea, Massachusetts, Prepared For: Bohler Engineering," dated October 30, 2013, last revised October 31, 2013, prepared by Control Point Associates, Inc., and recorded with the Bristol Fall River District Registry of Deeds in Plan Book 155, Page 30, to which plan reference is hereby made for a more particular description.

"Proposed Parcel 1" contains 452,804 + S.F. or 10.39 + acres,

according to said plan. "Proposed Parcel 2" contains 951,424 + S.F. or

21.84 + acres, according to said plan.

## Affidavit under M.G.L. c. § 5B (Affiant not an Attorney)

Property Address:
True Storage Condominium, 262 Swansea Mall Drive
Condominium Units 1, 2 and 3, Town of Swansea
Bristol County, Commonwealth of Massachusetts

Book _____

Page _____

I, Nicholas Fiorillo, Manager of Ocean Investment Holdings, LLC, a Massachusetts limited liability company ("Grantor") of Harwichport, Massachusetts, having personal knowledge of the facts herein stated, under oath depose and say as follows:

1    On January 11, 2022, Grantor conveyed (the "Conveyance") that certain real property situated in Bristol County, Massachusetts, known as Units 1, 2 and 3 of True Storage Condominium (the "Property") to GF Funding Swansea, LLC ("Grantee"), as evidence by that certain Special Warranty Deed with an effective date of January 11, 2022, recorded in the Bristol County Registry of Deeds at Book 10885, Page 197, on January 11, 2022.

2    The Property is legally described on Exhibit A attached hereto and incorporated herein.

3    The Conveyance was not subject to the provisions of M.G.L. Chapter 62C § 51 and Grantor was not classified for 2022 as a corporation for federal income tax purposes.

Signatures on next page.

The foregoing Affidavit was executed under penalties of perjury this _____ day of
_____, 2022.

**OCEAN INVESTMENT HOLDINGS LLC**

By:_____

              Nicholas Fiorillo, Manager
              Duly Authorized
              And Individually

State/Commonwealth of _____          _____,ss:

On _____, 2022 before me, the undersigned notary public, personally appeared
Nicholas Fiorillo, proved to me through satisfactory evidence of identification, which was a
Massachusetts drivers license, to be the person whose name is signed on the preceding or attached
document, and acknowledged to me that he signed it voluntarily for its stated purpose as Manager
of Ocean Investment Holdings LLC and on his individual behalf.

_____
Notary Public/Justice of the Peace
My Commission expires

EXHIBIT A

 The Grantor's entire Five Percent (5%) tenant in common interest in and to those three (3) certain condominium units located in the Town of Swansea, Bristol County, and Commonwealth of Massachusetts, more particularly described as follows:

Unit No. 1, Unit No. 2 and Unit No. 3 of the True Storage Condominium, a condominium located at 262 Swansea Mall Road, Swansea, Bristol County, Massachusetts, created pursuant to and subject to the provisions of Chapter 183A of the General Laws of Massachusetts, by Master Deed dated May 1, 2020 and recorded with the Bristol County Registry of Deeds at Book 10090, Page 247 (the "Master Deed").

Said Unit is conveyed together with the following undivided percent interest appertaining to said Units in the common areas and facilities of said Condominium: Unit 1 – 29.9% Unit 2 – 36.5% and Unit 3 – 33.6%.

Reference is hereby made to the plans entitled "Condominium Site Plan – True Storage", by Control Point Associates, Inc. dated April 2020 consisting of one (1) sheet bearing the verified statement of Gerry L. Holdright, Professional Land Surveyor recorded May 1, 2020 with said Deeds in Plan Book 165, Page 6, along with the above-mentioned Master Deed and floor plans.

Subject to the terms and conditions of the Master Deed and the True Storage Condominium Trust, dated May 1, 2020 and recorded in the Bristol County Registry of Deeds at Book 10090, Page 263.

Subject also to all other matters of record, including, without limitation, all easements, all restrictions and easements with covenants and restrictions affecting land, all reciprocal easements and all declarations of easements.

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, SS.                                    SUPERIOR COURT
                                               BUSINESS LITIGATION SESSION

GF FUNDING SWANSEA, LLC,
SWANSEA HOLDINGS, LLC, and
SMI HOLDINGS LLC,

        Plaintiffs,

            v.                                 CIVIL ACTION NO. 2284CV01064-BLS2

OCEAN INVESTMENT HOLDINGS, LLC
and NICHOLAS FIORILLO,

        Defendant.

## **REQUEST FOR ENTRY OF DEFAULT**

Pursuant to Mass. R. Civ. P. 55(a), Plaintiffs GF Funding Swansea, LLC, Swansea
Holdings, LLC, and SMI Holdings, LLC,  requests that a default enter against Defendants Ocean
Investment Holdings, LLC and Nicholas Fiorillo for failure to file a pleading responsive to the
complaint within the time allotted under Rule 12. The complaint was served on May 24, 2022. The
Return of Service was filed on June 2, 2022 (Docket No. 3 and 4). The answer was due June 13,
2022.

WHEREFORE, plaintiffs' requests that a default issue against defendants.

1

Respectfully submitted by,

GF FUNDING SWANSEA, LLC,
SWANSEA HOLDINGS, LLC, and SMI
HOLDINGS LLC,

By their attorney,

Kevin T. Peters, BBO#550522
kevin.peters@gesmer.com
GESMER UPDEGROVE LLP
40 Broad Street
Boston, MA  02109
Telephone:  (617) 350-6800

Dated : June 16, 2022

RB

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, SS.                          SUPERIOR COURT
                                      BUSINESS LITIGATION SESSION

GF FUNDING SWANSEA, LLC,
SWANSEA HOLDINGS, LLC, and SMI
HOLDINGS LLC,

    Plaintiffs,

        v.                            CIV. ACT. NO. 2284CV01064-BLS2

OCEAN INVESTMENT HOLDINGS, LLC
and NICHOLAS FIORILLO,

    Defendants.

### MOTION FOR ENTRY OF DEFAULT JUDGMENT

Pursuant to Mass. R. Civ. P. 55(b)(2), plaintiffs GF Funding Swansea, LLC, Swansea

Holdings, LLC, and SMI Holdings LLC, respectfully request the Court to enter a judgment in the

form attached. As grounds for this motion, plaintiffs state as follows:

1.      Plaintiffs commenced the above-captioned action against Ocean Investment

Holdings, LLC and Nicholas Fiorillo seeking specific performance and damages for breach of

contract and violations of Mass. Gen. L. Ch. 93A §11.

2.      The action arises from an agreement among the parties concerning the acquisition

and redevelopment of land and improvements in Swansea, Massachusetts commonly known as

The Swansea Mall, 262 Mall Drive, Swansea, MA 02777 (the "Property").

3.      Following defendants' default on that agreement, the parties entered into

settlement negotiations that resolved into an agreement to acquire Ocean Investment's interest in

the Property for one million five hundred thousand dollars ($1,5000,000). Under the agreement,

1

Date Filed 8/11/2022 4:15 PM
Superior Court - Suffolk
Docket Number 2284CV01064

defendants committed that in the event "the Deed requires correction in the future due to any title company or title underwriter matter in connection with any future financing or in connection with any future conveyance, Ocean, its successors and assigns shall cooperate with the same and execute any necessary instruments to accomplish the same, without expense to Ocean, its successors and assigns."

4.     The Property is under agreement, and the buyer's title insurer requires affidavits in the form attached to clear title. Demand was made on defendants which they ignored. This action was therefore commenced on May 4, 2022.

5.     Defendants ignored the complaint as well, and on June 16, 2022, were defaulted. Plaintiffs now request a default judgment in the form attached hereto as Exhibit A.

6.     As averred in the simultaneously filed affidavit, Mr. Fiorillo is not an infant or incompetent or incapacitated. See Mass. Gen. L. Ch. 190B. Nor is he in military service entitled to protection under the "Servicemembers Civil Relief Act," 50 U.S.C. §§ 3901 et seq.

WHEREFORE, GF Funding Swansea, LLC, Swansea Holdings, LLC, and SMI Holdings LLC respectfully request the Court to enter a judgment in the form attached hereto and incorporated by reference as Exhibit A.

Date Filed 8/11/2022 4:15 PM
Superior Court - Suffolk
Docket Number 2284CV01064

Respectfully submitted by,

GF FUNDING SWANSEA, LLC,
SWANSEA HOLDINGS, LLC, and SMI
HOLDINGS LLC,

By their attorney,

_____
Kevin T. Peters, BBO#550522
kevin.peters@gesmer.com
GESMER UPDEGROVE LLP
40 Broad Street
Boston, MA  02109
Telephone:  (617) 350-6800

Dated : July 15, 2022

## CERTIFICATE OF SERVICE

I, Kevin T. Peters, hereby certify that on July 15, 2022, I served a true and accurate copy of the foregoing document on all counsel of record and pro-se defendant via email.

_____
Kevin T. Peters

3

Date Filed 8/11/2022 4:15 PM
Superior Court - Suffolk
Docket Number 2284CV01064

# EXHIBIT A

Date Filed 8/11/2022 4:15 PM
Superior Court - Suffolk
Docket Number 2284CV01064

Page 1 of 3

## PURCHASE AGREEMENT

## SWANSEA TRUE STORAGE PROPERTY

This Purchase (hereinafter "Agreement") is made by and between GF FUNDING SWANSEA, LLC, a Massachusetts limited liability company ("GF" or "Buyer"), whose address is 670 N. Commercial Street, Suite 303, Manchester, New Hampshire 03101 and OCEAN INVESTMENTS HOLDINGS, LLC, a Massachusetts limited liability company ("Ocean") and Nicholas Fiorillo, individually, ("Fiorillo") (Ocean and Fiorillo are collectively referred to as "Seller") whose address is 3 Kales Way, Harwichport, MA 02646, (collectively, "the Parties").

WHEREAS, GF and Ocean are tenant in common owners of the real property located at 262 Swansea Mall Drive in Swansea, Massachusetts, known as True Storage Condominium, and containing condominium units identified as Unit 1, Unit 2 and Unit 3, formerly known as the Apex parcel (the "Property") and the Property contains a self storage business operation; and

WHEREAS, the Buyer desires to purchase Seller's Five Percent (5%) tenant in common interest in the Property.

NOW THEREFORE, in consideration of the agreements and covenants set forth herein, and intending to be legally bound, the Parties agree as follows:

1.      The Buyer shall pay the Seller the sum of Eight Hundred Ten Thousand Dollars ($810,000.00) (the "Purchase Price") payment will be effectuated by wire to Seller's attorney prior to Seller executing the deed. Seller's attorney shall hold the funds in his IOLATA account for the benefit of the Seller until the seller affixes his signature to the deed and the deed is filed in the Fall River District Registry of deeds. as such term is defined below. The Purchase Price shall be allocated as set forth in the Deed. The Seller shall record the Deed electronically on the day that this Agreement is fully signed. There shall be no prorations and the Buyer shall pay recording fees and the Massachusetts Transfer Tax in the amount of $3,693.60.  The full performance of this Agreement shall also cancel any and all debt owed by Ocean or Fiorillo related to the Property.

2.      Upon the full signing of this Agreement, Fiorillo shall, on behalf of Ocean, sign the deed in the form as attached hereto (the "Deed") to convey Ocean's Five Percent (5%) tenant in common interest in the Property to the Buyer.

3.      The Parties agree that the Deed shall be recorded forthwith and in the event that the Deed requires correction in the future due to any title company or title underwriter matter in connection with any future financing or in connection with any future conveyance, Ocean, Fiorillo, their successors and assigns shall cooperate with the same and execute any necessary instruments to accomplish the same, without expense to Ocean, Fiorillo, their successors and assigns.

SDB
GF

Ocean

Fiorillo

Page 2 of 3

4.   The Parties certify and acknowledge that they have read this Agreement carefully, that they have been afforded sufficient time to understand the terms and effects of this Agreement, and that they do, in fact, fully understand all of the terms and effects of this Agreement, that they have been advised to consult with legal counsel, and in fact have consulted legal counsel prior to signing this Agreement, and that they are voluntarily entering into and executing this Agreement.

5.   Effective upon the recording of the Deed and payment of the Purchase Price, excluding any obligations contained herein, the Buyer parties, their respective agents, successors and assigns and the Seller parties, their respective agents, successors and assigns, do hereby mutually discharge and release the other, their current, former and future tenant in common owners, officers, directors, shareholders, member, managers, employees, affiliates, attorneys, successors, and predecessors, of and from any and all actions, causes of action, suits, controversies, proceedings, and all liabilities of every name, nature and description, both in law and equity, which they may have ever had or may have, and consequences thereof, but which at this time are unknown or unanticipated and which may develop at some time in the future, and all unforeseen developments arising from known damages, relating in any way to any real property and the Property and/or businesses conducted at any real property or at the Property now or in the future. Notwithstanding anything contained herein to the contrary, the foregoing mutual release shall in no way prohibit or limit Ocean and/or Fiorillo from pursuing George A. McLaughlin, III in connection with any claim or dispute which is currently pending or otherwise discovered and/or pursued in the future, it being the parties' intent that the foregoing mutual release shall in no way apply to a release of claims and/or disputes against the said George A. McLaughlin, III.

6.   This Agreement and all such covenants, and agreements shall be binding upon and inure to the benefit of the heirs, executors, administrators, personal representatives, successors, and assigns of the Parties.

7.   The validity, interpretation, performance, and enforcement of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

8.   This Agreement may be executed by the Parties in multiple counterparts, each of which shall constitute an original.   This Agreement may be executed by facsimile, by .pdf or other electronic signature or by original. A facsimile, .pdf or other electronic signature transmission of a signed original shall have the same effect as an original signature but shall not relieve any party from the obligation to deliver an executed original.

_SDR_
GF

_Ⓞ_
Ocean

_Ⓤ_
Fiorillo

Date Filed 8/11/2022 4:15 PM
Superior Court - Suffolk
Docket Number 2284CV01064

Page **3** of **3**

Signatures to follow on next page.

       IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by it selves or its duly authorized representatives effective as of the date first above written.

GF FUNDING SWANSEA, LLC, a Massachusetts limited liability company

By: _____     Dated: January _10_, 2022
Name:  Shane D. Brady
Title:  Authorized Signatory

OCEAN INVESTMENTS HOLDINGS, LLC, a Massachusetts limited liability company

By: _____     Dated: January _____, 2022
Name:  Nicholas Fiorillo
Title:  Authorized Signatory

_____     Dated: January _____, 2022

Nicholas Fiorillo, Individually

_SDB_      _____      _____
GF           Ocean       Fiorillo

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, SS.                                    SUPERIOR COURT
                                               BUSINESS LITIGATION SESSION

GF FUNDING SWANSEA, LLC,
SWANSEA HOLDINGS, LLC, and SMI
HOLDINGS LLC,

    Plaintiffs,                              CIV. ACT. NO. 2284CV01064-BLS1

        v.

OCEAN INVESTMENT HOLDINGS, LLC
and NICHOLAS FIORILLO,

    Defendants.

## MOTION FOR ASSESSMENT OF DAMAGES

Pursuant to Mass. R. Civ. P. 55(b)(2), plaintiffs GF Funding Swansea, LLC, Swansea

Holdings, LLC, and SMI Holdings LLC respectfully request the Court to enter a judgment in the

form and amount stated in the attached draft order. As grounds for this motion, plaintiffs state as

follows:

    1.      Plaintiffs commenced the above-captioned action against Ocean Investment

Holdings, LLC and Nicholas Fiorillo seeking specific performance and damages for breach of

contract and violations of Mass. Gen. L. Ch. 93A §11.

    2.      The action arises from an agreement among the parties concerning the acquisition

and redevelopment of land and improvements in Swansea, Massachusetts commonly known as

The Swansea Mall, 262 Mall Drive, Swansea, MA 02777 (the "Property").

    3.      Following defendants' default on that agreement, the parties entered into

settlement negotiations that resolved into an agreement to acquire Ocean Investment's interest in

the Property for one million five hundred thousand dollars ($1,5000,000). Under the agreement, defendants committed that in the event "the Deed requires correction in the future due to any title company or title underwriter matter in connection with any future financing or in connection with any future conveyance, Ocean, its successors and assigns shall cooperate with the same and execute any necessary instruments to accomplish the same, without expense to Ocean, its successors and assigns."

4. Title to the Property need to be cleared. While investigating title to the two Properties, the title insurer determined that deeds from Fiorillo conveying his company's 5% interest in the Property did not contain corporate excise tax lien waiver language. The title insurer agreed to accept a corrective affidavit. Demand was made, and inspired the response attached as Exhibit 2. Plaintiffs therefore commenced on May 4, 2022.

5. Defendants ignored the complaint and on June 16, 2022 were defaulted. Plaintiffs now request a judgment in the form attached hereto as Exhibit 1.

6. Nature and type of all damages requested and the amount of any damages that are a sum certain or a sum are the following:

    a. Attorneys' Fees: $31,033.47 (*See* Exhibit 3);

    b. Damages: Under circumstances, attorneys' fees are damages. Fiorillo refused to comply with his contractual obligations and made specious written threats of litigation seeking hundreds of millions of dollars in damages simply in response to plaintiffs' request that he comply with his contractual obligations. This ruse had one purpose - to compel plaintiffs to pay money to Fiorillo to which he had absolutely no claim. This pretext and abuse plainly violated Mass. Gen. L. Ch. 93A. *See Anthony's Pier*

*Four, Inc. v. HBC Associates,* 411 Mass. 451 (1991). Had Fiorillo

answered the complaint and articulated any defense with even marginal

legitimacy, this matter would be just like any other typical c.93A

violation. This matter is not typical, however. Fiorillo had no defenses and

his failure to answer despite extensions justifies an inference that he never

intended to litigate his bogus claims but wafted them in hopes of extorting

money. Plaintiffs were required to hire lawyers and incur legal fees to

clear title when it was undeniably clear that Fiorillo was contractually

required to sign documents that would have accomplished this without

litigation. Legal fees, under the circumstances, are damages. *See Columbia*

*Chiropractic Group v. Trust Ins. Co.*, 430 Mass. 60, 63 (1999) ("Because

Trust's litigation expenses were actual damages (a 'loss of money') caused

by the G. L. c. 93A violation, those expenses were recoverable, and,

because Columbia's violation was wilful and knowing, the judge was

warranted in doubling them."); *McLaughlin v. American States Ins. Co.*,

90 Mass. App. Ct. 22, 33 (2016) ("where an insurer's protracted delay in

settling the underlying tort case requires a plaintiff to proceed to trial on

that case, the plaintiff's attorney's fees and expenses incurred in that suit

are properly recoverable as actual damages caused by the statutory

violation."); *Siegel v. Berkshire Life Ins. Co.*, 64 Mass. App. Ct. 698, 703

(2005) ("If a c. 93A violation forces someone to incur legal fees and

expenses that are not simply those incurred in vindicating that person's

3

rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property.").

WHEREFORE, GF Funding Swansea, LLC, Swansea Holdings, LLC, and SMI Holdings LLC respectfully request the Court to enter a judgment in the form attached hereto and incorporated by reference as Exhibit 1.

Respectfully submitted by,

GF FUNDING SWANSEA, LLC,
SWANSEA HOLDINGS, LLC, and SMI
HOLDINGS LLC,

By their attorney,

Kevin T. Peters, BBO#550522
kevin.peters@gesmer.com
GESMER UPDEGROVE LLP
40 Broad Street
Boston, MA  02109
Telephone:  (617) 350-6800

Dated: November 22, 2022

**CERTIFICATE OF SERVICE**

I, Kevin T. Peters, hereby certify that on November 22, 2022, I served a true and accurate copy of the foregoing document on all counsel of record and Nicholas Fiorillo via email and first class mail.

Kevin T. Peters

4